FILED
10 AUG -5 PM 3:14
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

BLECHER & COLLINS, P.C.
Maxwell M. Blecher (State Bar No. 026202)
  mblecher@blechercollins.com
Courtney A. Palko (State Bar No. 233822)
  cpalko@blechercollins.com
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

CHARLES T. COLLETT, P.C.
ctcollett@earthlink.net
620 Newport Center Drive, Suite 280
Newport Beach, California 92660
Telephone: (949) 640-7676
Facsimile: (949) 640-5858

Attorneys for Plaintiff AFMS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AFMS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE CO. and FEDEX CORPORATION,<br><br>Defendants. | CASE NO. CV10 5830-mmm (RCx)<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:<br><br>(1) SHERMAN ACT §1;<br>(2) SHERMAN ACT §2;<br>(3) INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONSHIPS; AND<br>(4) BREACH OF CONTRACT<br>(5) UNFAIR COMPETITION, §17200 BUSINESS & PROFESSIONS CODE<br><br>(DEMAND FOR JURY TRIAL) |

The above-named plaintiff files this Complaint against the above-named defendants and, demanding trial by jury, complains and alleges as follows:

I.

**JURISDICTION AND VENUE**

1. The federal antitrust claims stated herein are filed and these proceedings are instituted against the above-named defendants under Section 4 of

- 1 -

the Clayton Act (15 U.S.C. §15) to recover treble the actual damages sustained by plaintiff to its business and property by reason of the above-named defendants' violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1, 2) as hereinafter alleged. This Court has original jurisdiction over these federal antitrust claims pursuant to 28 U.S.C. §1337 and 28 U.S.C. §1332. The remaining claims under state law arise out of the same transactions and occurrences as the federal claims. Accordingly, this Court has supplemental jurisdiction over such state claims pursuant to 28 U.S.C. §1367. Further, as alleged below, there is complete diversity of citizenship among the parties and the amount in controversy for each state law claim alleged exceeds $75,000. Consequently, this Court also has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. §1332.

2. The interstate trade and commerce involved and affected by the alleged violation of California law was carried on, in part, within this District and some of the unlawful acts described herein were conceived, performed or made effective within this District. Venue is appropriate in this District pursuant to 28 U.S.C. §1391.

## II.

## THE PARTIES

3. Plaintiff **AFMS LLC** (hereafter "AFMS") is a privately held Limited Liability Company, existing under the laws of the State of Oregon, with its principal place of business in Portland, Oregon. AFMS is the industry leader in providing small parcel and freight consulting services and assisting shippers negotiate competitive small parcel and freight contracts. AFMS conducts its business through "managing directors" who act as consultants and has had the largest number of such managing directors located in Southern California where approximately fifty percent (50%) of its consulting business revenues were generated by large shippers such as Sony, Toyota, Honda, Quiksilver, Guess, Applied Bio-Systems and St. John Knits.

4. Defendant **United Parcel Service, Inc.** (hereafter "UPS") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia. UPS is the world's largest package delivery company delivering more than 15 million packages a day to more than 6 million customers in more than 200 countries.

5. Defendant **FedEx Corporation** (hereafter "FedEx") is corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Memphis, Tennessee. FedEx is engaged in the business of package delivery and express shipping. FedEx is the world's second largest package delivery company.

## III.

## FACTS COMMON TO ALL COUNTS

6. Both UPS and FedEx are engaged in the delivery, by ground and by air, of time-sensitive letters, documents and packages. These two companies have emerged in recent years as the only two commercial entities engaged in the business of delivering time sensitive letters, documents and packages and are in direct and substantial competition with each other. The United States Postal Service delivers letters, documents and packages, but its service offerings are not time sensitive (promised delivery time or the charge is waived) or guaranteed so it is not fully competitive, in the perception of most shippers, as a reasonably interchangeable substitute for UPS or FedEx. Accordingly, it does not operate as a serious competitive constraint on either UPS or FedEx. At one time DHL was a more significant competitor of both UPS and FedEx because it engaged in the same time sensitive delivery business, but has been forced to curtail that activity in the United States and ships such materials only to and from foreign countries.

7. In 2009, FedEx enjoyed the larger market share of air shippers for time sensitive letters, documents and packages (as between it and UPS), both were equal with respect to international shipments, and UPS enjoys the largest share of

the ground segment of the market. Overall, these three market segments consisted of sixty billion dollars ($60,000,000,000) in revenue and overall UPS had a market share of 58.8% and FedEx a market share of 41.2%.

8. Both UPS and FedEx use complex customer contracts which shippers, even with professional shipping departments, find difficult to understand. Their respective rates depend on a variety of factors such as delivery time (next day or second or more day delivery) volume of weekly or monthly shipments, weight, distance, and include, without limitation, a variety of surcharges for (a) fuel (b) remote delivery area zip code charges; (c) commercial versus residential delivery, (d) Saturday delivery, (e) additional handling, (f) address correction for air or ground, (g) pick-up charges, (h) hazardous materials, (I) large packages, (j) C.O.D., (k) declared value and (l) delivery confirmation. UPS and FedEx have created a rating and fee matrix so complex that many, if not most, shippers must employ specialists to help them understand the nuances of the agreements and how they pertain to the parcels that shipper wishes to deliver.

9. Parcel consultants such as plaintiff AFMS gather and analyze data, including the shippers' past transactions, to develop a strategy to save the shippers money. Then the consultant implements that strategy by helping shippers negotiate with UPS/FedEx to achieve the maximum savings for the shipper. The consultants also provide logistical support for shippers in regard to selecting warehouse sites, type of services to be used and technology solutions. They are able to do this mainly by highlighting the hard and soft issues inherent in a very complex contractual and rating environment. In the past, many, perhaps most, including plaintiff AFMS, operate on a basis where their revenue from the shippers depends, at least in material part of the savings achieved. Consultants are, therefore, highly motivated to produce additional discounts and hence savings for shippers.

10. A 2007 Morgan Stanley Transportation Industry Report states that more than 11% of all shippers use a consultant, that 12% of all shippers switched carriers demonstrating that savings may be achieved by negotiation and switching and finally that 49% of all shippers using consultants enjoyed a greater discount, usually in the range of 15 - 30 % as compared with shippers not using consultants. The actual and potential effect of third party parcel consultants on revenues and profits of UPS and FedEx is substantial and would be at least in the low billions per year.

11. Eliminating these savings would, therefore, significantly reduce discounted shipments and substantially increase UPS/FedEx revenues and profits, UPS and FedEx agreeing to eliminate such consultant assisted services and discounted shipments would, therefore, be a form of price fixing within the meaning of United States v. Socony Vacuum Oil Co., 310 U.50 (1940).

12. Above and beyond the revenue/profit impact on UPS/FedEx, the consultants generated more intense competition between the two companies than otherwise would have existed. There is little, if any, published price competition between UPS and FedEx in that historically they have each announced lock-step price increases annually over a long number of years. Over the period 2007 - 2009, plaintiff AFMS alone found shipper customer savings of more than $100,000,000 in connection with UPS and FedEx shipments. The use of consultant generated discounts has reinvigorated price competition between UPS and FedEx which otherwise was at a reduced level.

13. UPS and FedEx, determined, that serious losses of revenues and profits would result from the increasing use of third party consultants, and they decided to discontinue dealing with third party consultants. At an industry event in Chicago in October 2009, attended by over 200 industry people, executives from both UPS and FedEx appearing on a panel announced the no third-party consultant policy and did not deny collusion between the companies in reaching

1  this decision when confronted with and questioned about these newly announced
2  policies. The no third-party consultant policies were confirmed in subsequent
3  writings.

4    14. The competitive impact of either FedEx or UPS unilaterally
5  terminating its dealings with third party consultants was so significant that neither
6  company would have dared to give the other such a huge potential competitive
7  advantage/opportunity without an understanding that both would terminate
8  dealings with third party consultants at or about the same time - as they did. The
9  cessation of dealing with plaintiff AFMS comes after 17 years of amicable and
10 mutually profitable business dealings between plaintiff AFMS and each defendant.

11   15. The boycott of or refusal to deal with third party consultants is
12 enforced, in part, by both UPS and FedEx respectively informing shippers that if
13 they (a) share contract data with third party consultants in violation of non-
14 disclosure agreements with UPS and FedEx, or (b) engage third party consultants
15 regardless of the sharing of data, the carriers will refuse to discuss rates and terms
16 or to negotiate any price changes and will actually raise the rates of those shippers.
17 Moreover, one AFMS managing director has been told in respect to business of a
18 customer that UPS "would not offer any different pricing because they knew
19 FedEx was not going to be pursuing the business..." And another managing
20 director was told by a representative of a customer that FedEx is not working with
21 third party consultants and that "UPS is going to be doing the same thing soon and
22 that neither carrier will be working with third parties. Such statements and
23 knowledge would be forthcoming only if there were collusion between UPS and
24 FedEx.

25   16. The delivery of time sensitive letters, documents and packages,
26 and the third party consultant negotiations and logistical advice relating to such
27 delivery, directly involves and directly affects interstate and foreign commerce.
28 The violations of the antitrust laws alleged hereafter in Counts One and Two have

had the effect of substantially lessening, suppressing, eliminating and interfering with competition in the business of delivering time sensitive letters, documents and packages by air or ground within the United States and to and from the United States to foreign countries.

## IV.

## COUNT ONE

### (Violations of Section 1 of the Sherman Act, 15 U.S.C. § 1)

17. Plaintiff repeats and realleges paragraphs 1 - 16, above, with the same force and effect as though set forth in full at this point.

18. Beginning on or about the Fall of 2009 and continuing to the present, defendants have combined and conspired to unreasonably restrain trade and commerce in the delivery of time sensitive letters, documents and packages by

(a) boycotting (refusing to deal with) any third party shipping consultant (a group boycott) and

(b) by refusing to negotiate with or discuss discounts with and actually raising the prices to shippers who either share contract data with a third party consultant or actually retain such a third party consultant (a "tie-out" arrangement). Each of these agreements independently and both together violate Section 1 of the Sherman Act (15 U.S.C. § 1) and these agreements have as their purpose and effect the stabilizing and raising of prices in the delivery of time sensitive materials in violation of Section 1 of the Sherman Act (15 U.S.C. §1). These agreements are, in and of themselves, per se violations of said statute.

19. Because defendants are the only two significant carriers of any consequence in the United States, their agreement to boycott any third party consultant company directly threatens the continued viability of any such consultant. Accordingly, not to deal with third party consultants as described herein operates to protect defendants from competition in violation of the Sherman Act.

20. Defendants' acts and practices have had and, unless enjoined, will continue to have the following injurious effects:

    a. Competition among and between defendants has been suppressed and diminished;

    b. Consumer (shipper) freedom of choice has been suppressed and diminished;

    c. Competition among and between third party consultants has been suppressed and diminished; and

    d. Shippers are being forced to pay higher prices for shipping letters, documents and packages.

21. As a direct and proximate result of the conduct alleged in this Court, plaintiff has suffered and will continue to suffer substantial financial injury in its business and property in that it is being deprived of its ability to function as a third party consultant. As a result, plaintiff has been deprived of revenue and profits it would otherwise have made. Plaintiff has not calculated the precise extent of its past damages, but estimates its damages, which continue to accrue, are in the estimated range of $15,000,000 - $20,000,000. When Plaintiff has sufficient information to allege with specificity, the quantum of damages, it will ask leave of the Court to amend this Complaint to insert said sums herein.

V.

## COUNT TWO

(Violations of Section 2 of the Sherman Act, 15 U.S.C. §2)

22. Plaintiff repeats and realleges Paragraphs 1-21 herein with the same force and effect as through set forth in full at this point.

23. Beginning in the Fall of 2009 and continuing thereafter through the filing of this Complaint and beyond, each defendant has been and is engaged in a plan and scheme to achieve or maintain monopoly power in the delivery of

time sensitive letters, documents and packages in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

24. The actual monopolization, or alternatively the attempt to monopolize, has consisted of a deliberate course of action, undertaken by each defendant with the specific intent of eliminating plaintiff AFMS, and other third party consultants as factors in the market for the delivery of letters, documents and packages in the United States and in foreign commerce, as follows:

(a) Each, as a means of stabilizing and increasing prices, has refused to deal with plaintiff AFMS and other third party shipping consultants, even though they have done so for years preceding the Fall of 2009;

(b) Each has threatened shippers that if they (I) share contract data covered by a non-disclosure agreement with any third party consultant or (ii) actually use a consultant, the carrier will not negotiate rates and terms with the shipper, will not grant the shipper any discounts and will, in fact, raise the price to such shippers.

25. This course of conduct has resulted in each defendant actually monopolizing the delivery of letters, documents and packages in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. §2). Alternatively, if either defendants' conduct has fallen short of actually monopolizing that market, it presents a dangerous probability of success in monopolizing that market characterized by high entry barriers in terms of extraordinary capital requirements, entrenched competitors and other factors.

### COUNT THREE
#### (Intentional Interference with Contract and Prospective Economic Relationships)

26. Plaintiff repeats and realleges Paragraphs 3-25 herein with the same force and effect as through set forth in full at this point.

- 9 -

27. Plaintiff AFMS had actual, ongoing business relationships with shippers, as alleged herein, and those relationships were either actual contracts or which had a reasonable probability of ripening into a full contractual relationship to provide consulting services to shippers. Accordingly, these relationships between plaintiff AFMS were valuable business relationships.

28. Each defendant had full knowledge of the existence of each of the above-described relationships as alleged between plaintiff AFMS and shippers and actually participated therein.

29. Each defendant knowing of plaintiff's relationships with said shippers, induced and persuaded those shippers not to deal with AFMS with the intent to prevent all third party consultants from causing defendants the loss of billions of dollars in revenues and profits and each has enforced its boycott of third party consultants by threatening shippers with higher rates, no discounts and actually no negotiation of terms and conditions of shipments if those shippers either share contract data with a third party consultant or actually hire such a consultant. Each defendant engaged in this conduct to extract higher prices, revenues and profits from shippers and to eliminate the discounting brought about by the efforts of third party consultants, all to the detriment of the shipper-consumers.

30. As alleged in this Count, the conduct of each defendant was wrongful separate and apart from the fact that the conduct interfered with or disrupted the economic relationship between plaintiff and its clients in that it also violated a statute (namely Sections One and Two of the Sherman Act), recognized rules of common law (prohibiting conspiracies to restrain trade and the use of economic duress), and was out of the realm of legitimate business transactions.

31. Both defendants to preserve their long-term ability to increase revenues by billions of dollars refused to deal with plaintiff AFMS and precluded its clients from so doing.

32. As a proximate result of each defendants' conduct, plaintiff estimates its lost profit damages to be in the range of $15,000,000 - $20,000,000, with its lost profits mounting over time.

33. In inducing and persuading AFMS' clients not to deal with AFMS, and in using threats and punishment to shippers who wish to share data with or actually hire a third party consultant, each defendant acted maliciously, willfully and oppressively. Plaintiff AFMS is, therefore, entitled to punitive damages.

## COUNT FOUR

### (Breach of Contract Against Each Defendant)

34. Plaintiff repeats and realleges Paragraphs 3-25 herein with the same force and effect as though set forth in full at this point.

35. Each defendant had an agreement with plaintiff AFMS, which was supported by adequate consideration, and which was developed over a course of 17 years of actual dealing in connection with arranging shipments for AFMS' shipper clients.

36. All conditions precedent to defendants' duties of immediate performance have been performed, or have occurred, or have been excused, or have been waived. Plaintiff has performed all of the acts required under the respective contracts with each defendant.

37. In direct violation of those agreements and without justification, each defendant has refused to deal with plaintiff AFMS and has sought to intimidate its customers into also not dealing with AFMS.

38. As a direct and proximate result of that breach, each defendant has seriously impacted plaintiff's ability to function as a third party consultant causing it to lose clients, revenues and profits.

39. As a proximate result of each defendants' conduct, plaintiff estimates its lost profit damages to be in excess of $15,000,000 - $20,000,000, with its lost profits mounting over time.

### COUNT FIVE

**(Unfair Competition Under § 17200 of the Business & Professions Code)**

40. Plaintiff repeats and realleges Paragraphs 3-25 herein with the same force and effect as though set forth in full at this point.

41. The conduct of each defendant alleged herein, namely the concerted or even individual refusal to deal, the intimidation of AFMS' customers by refusing to negotiate or to grant discounts to any which choose to share contract data with or to hire AFMS constitutes unfair competition in violation of § 17200 of the California Business & Professions Code in that it has caused shippers to pay higher prices, has denied shippers of the logistical advice of third party consultants and has diminished and chilled legitimate competitive activity.

42. Plaintiff is entitled to injunctive relief pursuant to Business & Professions Code § 17203.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court adjudge and decree as follows:

1. That each named defendant has violated Section 1 of the Sherman Act as set out in Count One and that judgment be entered against each defendant for treble the amount of actual damages suffered by plaintiff and that plaintiff also be awarded a reasonable attorneys' fees and recover its costs of suit, as required by Section 4 of the Clayton Act.

2. That each defendant has violated Section 2 of the Sherman Act as set out in Count Two and that judgment be entered against each defendant for treble the amount of actual damages suffered by Plaintiff and that plaintiff also be

awarded a reasonable attorneys' fees and recover its costs of suit, as required by Section 4 of the Clayton Act.

3. That each defendant has intentionally interfered with plaintiff AFMS' actual contracts and prospective economic relationships and that plaintiff be awarded (a) its actual damages suffered as a result thereof, and (b) exemplary and punitive damages for such intentional interference with plaintiff's actual contracts and prospective economic relationships.

4. That each defendant be found to have breached their respective contracts with plaintiff AFMS and that plaintiff recover the actual damages suffered as a result thereof.

5. For injunctive relief under § 17203 of the Business & Professions Code for violation of § 172000 of that Code.

6. That plaintiff AFMS be entitled to such other and further relief as the Court may deem just and proper in the circumstances.

Dated: August 5, 2010

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
COURTNEY A. PALKO
CHARLES T. COLLETT

By: _____
Maxwell M. Blecher
Attorneys for Plaintiff AFMS LLC

- 13 -

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C. Rule 38) and Local Rule 3.4.10.

Dated:   August 5, 2010

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
COURTNEY A. PALKO
CHARLES T. COLLETT

By: *[signature]*
Maxwell M. Blecher
Attorneys for Plaintiff AFMS LLC

#42881