1  KENNETH P. EWING *(Pro Hac Vice)*
   kewing@steptoe.com
2  **STEPTOE AND JOHNSON, LLP**
   1330 Connecticut Avenue NW
3  Washington, D.C.  20036-1795
   T: (202) 429-6264; F: (202) 429-3902
4
   RICHARD ROBERTS (*Pro Hac Vice*)
5  rrroberts2@fedex.com
   MICHAEL E. GABEL (*Pro Hac Vice*)
6  megabel@fedex.com
   M. KIMBERLY HODGES(*Pro Hac Vice*)
7  kim.hodges@fedex.com
   COLLEEN HITCH WILSON(*Pro Hac Vice*)
8  chitchwilson@fedex.com
   **FEDERAL EXPRESS CORPORATION**
9  3620 Hacks Cross Road, Building B, 3rd Floor
   Memphis, TN  38125
10 T: (901) 434-8600; F:  (901) 434-4523

11 **Attorneys for Defendant**
   **FEDEX CORPORATION**
12

13

14                 UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

16 AFMS LLC,                          | Case No. 2:10-cv-05830-JGB-AJW

17          Plaintiff,                | JUDGE JESUS G. BERNAL

18     v.                             | MEMORANDUM OF POINTS AND
                                      | AUTHORITIES IN SUPPORT OF
19 UNITED PARCEL SERVICE CO.          | DEFENDANT FEDEX
   and FEDEX CORPORATION,             | CORPORATION'S MOTION FOR
20                                    | SUMMARY JUDGMENT
          Defendants.
21                                    | **FILED UNDER SEAL**

22                                    | **PURSUANT TO AMENDED**
                                      | **STIPULATED PROTECTIVE ORDER**
23                                    | **DATED 9/26/12**

24                                    | Date:        August 12, 2013
25                                    | Time:        9:00 a.m.
                                      | Courtroom:   1
26
                                      | Complaint Filed:  August 5, 2010
27                                    | Trial Date:        February 4, 2014
28

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................I

TABLE OF AUTHORITIES...........................................................III

TABLE OF ABBREVIATIONS ........................................................VI

INTRODUCTION ........................................................................ 1

FACTUAL BACKGROUND............................................................ 3

    I.    FedEx .................................................................... 3

    II.    FedEx's Sales Organization ...................................... 4

    III.    FedEx's Sales Strategy ............................................ 4

    IV.    FedEx Observes Increased 3PN Activity....................... 6

    V.    FedEx's Corporate Sales and Worldwide Services Groups Develop Formal Strategies Regarding 3PNs. ...................... 7

    VI.    Communicating Corporate Sales' Strategy........................... 9

    VII.    Worldwide Services Partially Adopts 3PN Strategies ......... 10

    VIII.    Field Sales Develops Its 3PN Strategy ............................. 10

    IX.    The Strategies In Operation ..................................... 12

    X.    FedEx Developed Its Strategies Without Knowing What Approach UPS Was Taking To 3PNs......................... 13

ARGUMENT.............................................................................. 13

    I.    Summary Judgment Is Required Because AFMS Does Not Have Standing to Pursue a Sherman Act Section 1 Claim Against FedEx. ...................................................... 14

    II.    Summary Judgment Is Required Because Undisputed Facts Preclude Finding the Conspiracy Required by Sherman Act Section 1................................................................. 16

        A.    There Is No Direct Evidence of Conspiracy............................ 17

        B.    Conspiracy Cannot Be Inferred Because Unilateral Action by FedEx Towards 3PNs Was Justified and Consistent with FedEx's Self-Interest Even if UPS Did Not Adopt a Similar Approach............................................ 20

        C.    Conspiracy Cannot Be Inferred from Parallel Conduct Because FedEx's and UPS's Conduct Was Not Parallel. ........ 24

    III.    Summary Judgment Is Required Because AFMS Cannot Demonstrate That the Alleged Agreement Unlawfully Restrained Trade. ...................................................... 29

        A.    The "Rule of Reason" is the Proper Analysis. ......................... 29

ii

B.    AFMS's Section 1 Claim Fails Because AFMS Is Unable
to Show Harm to Competition in a Relevant Market. ............. 31

C.    Summary Judgment Is Required as to Count III Because
FedEx's Non-Disclosure Agreements Did Not Harm
Competition. .......................................................................... 37

CONCLUSION ................................................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

***Amarel v. Connell***
102 F.2d 1494, 1507 (9th Cir. 1996) .......................................................... 1, 16

***Matsushita Elec. Indus. Co. v. Zenith Radion Corp.***
475 U.S. 574, 588 (1986) ............................................................ 1, 14, 16, 21

***County of Tuolumne v. Sonora Cmty. Hosp.***
236 F.3d 1148, 1154 (9th Cir. 2001) ............................................................ 13

***M.A.P. Oil Co., Inc. v. Texaco, Inc.***
691 F.2d 1303, 1306 (9th Cir. 1982) ............................................................ 15

***Yellow Pages Consultants, Inc. v. GTE Directories Corp.***
951 F.2d 1158 (9th Cir. 1991) ...................................................................... 15

***Legal Economic Evaluations v. Metro Life Ins. Co.***
39 F.3d 951, 954-956 (9th Cir. 1994) ........................................................... 15

***Bhan v. NME Hosps., Inc.***
772 F.2d 1467, 1470 (9th Cir. 1985) ............................................................ 15

***Toscano v. PGA***
258 F.3d 978, 983 (9th Cir. 2001) ................................................................ 16

***Richards v. Neilson Freight Lines***
810 F.2d 898, 904 (9th Cir. 1987) ................................................................ 16

***Citric Acid Litig***
191 F.3d 1090, 1102 (9th Cir. 1999) ................................................. 16, 19, 21

***Ralph C. Wilson Indust. Inc., v. Chronicle Broad. Co.,***
794 F2d 1359, 1365 (9th Cir. 1986) ............................................................. 16

***Jeanery, Inc. v. James Jeans, Inc.***
849 F.2d 1148, 1157 (9th Cir. 1988) ............................................................ 17

***Superior Offshore Int'l, Inc. v. Bristow Group***
490 Fex.Appx. 492 at 497-98  (3d Cir. 2012) ............................................... 17

***Baby Food Antitrust Litig.***
166 F..3d 112, 127 (3d Cir. 1999) .................................................... 18, 19, 20

***Zoslaw v. MCA Distrib. Corp.***
693 F.2d 870, 885 (9th Cir. 1982) ................................................................ 18

***Hall v. United Airlines, Inc.***
296 F. Supp. 2d 652, 67 Fed.Appx. 680 (6th Cir. 2009) ............................... 18

iv

*Blomkest Fertilizer v. Potash Corp.*
   203 F.3d 1028 (8th Cir. 2000) ................................................19

*Am. Chiropractic Ass'n v. Trigon Healthcare*
   367 F.3d 212, 226-27 (4th Cir. 2004) ......................................20

*Brooke Group Ltd v. Brown & Williamson Tobacco Corp*
   509 U.S. 209, 227 (1993) ........................................................21

*Bell Atl. Corp v. Twombly*
   550 U.S. 544, 553 (2007) ........................................................21

*O.S.C. Corp. v. Apple Computer, Inc.*
   792 F.2d 1464, 1468 (9th Cir. 1986)........................................22

*Red Lion Med Safety, Inc. v. Ohmeda, Inc.*
   63 F. Supp. 2d 1218, 1240 (E.D. Cal. 1999)............................22

*Dual-Deck Video cassette Recorder Antitrust Litig.*
   1990 WL 126500 at 14 (D. Ariz. July 25 1990) ......................22

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. Of Realtors*
   786 F.2d 1400, 1407 (9th Cir. 1986)........................................22

*Cosmetic Gallery, Inc. v. Schoeneman Corp.*
   495 D.3d 46, 53-54 (3rd Cir. 2007)..........................................24

*Merck-Medco Managed Care, Inc. v. Rite Aid Corp*
   22 F. Supp. 2d 447, 467 (D.Md. 1998) 201 F.3d 436 (4th Cir. 1999)..........24

*State Oil v. Khan*
   552 U.S. 3, 10 (1997) ......................................................29, 37

*Cascades Computer Innovation LLC v. RPX Corp.*
   WL 316023 at 8 (N.D. Cal. Jan. 24, 2013) ..............................29

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*
   182 F.3d 1096, 1101 (9th Cir. 1999)........................................29

*National Society of Prof'l Eng'rs v. United States*
   435 U.S. 679, 692 (1978)........................................................29

*Unites States v. Socony-Vacuum Oil Co.*
   310 U.S. 150 (1940) ................................................................29

*Hahn v. Or. Physicians' Serv.*
   868 F.2d 1022, 1030 (9th Cir. 1988)........................................30

*Adaptive Power Solutions, LLc v. Hughes Missile Sys. Co.*
   141 F.3d 947, 949-50 (9th Cir. 1998) ......................................30

*Ariz v. Maricopa County Med. Soc'y*
   457 U.S. 332, 344, 349 n.19 (1982)........................................31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

*Tanaka v. Univ. of S. Cal.*
   252 F.3d 1059, 1063 (9th Cir. 2001)..............................................................32

*Gough v. Rossmoor Corp.*
   585 F.2d 381 (9th Cir. 1978)..............................................................32, 33

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*
   875 F.2d 1369, 1374 (9th Cir. 1989)..............................................................33

*Syufy Enters v. Am. Multicinema, Inc.*
   793 F.2d 990, 995 (9th Cir. 1986)..............................................................33

*United States v. E.I. DuPont de Nemours & Co.*
   351 U.S. 377, 394-95 (1956)..............................................................33

*Live Concert Antitrust Litig.*
   863 F. Supp. 2d 966, 983 (C.D. Cal. 2012)..............................................................33, 34

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*
   676 F.2d 1291. 1300 (9th Cir. 1982)..............................................................33

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*
   884 F.2d 504, 508 (9th Cir. 1989)..............................................................34, 36

*Theee Movies of Tarzana v. Pacific Theatres, Inc.*
   828 F.2d 1395, 1400 (9th Cir. 1984)..............................................................36

*Bus. Elecs. Crp. v. Sharp Elecs. Corp*
   485 U.S. 717, 724  (1988)..............................................................37

vi

## TABLE OF ABBREVIATIONS

| **Full Name** | **Abbreviation** |
|---|---|
| AFMS, LLC | **AFMS** |
| United Parcel Service Co. | **UPS** |
| FedEx Corporation | **FedEx** |
| Third Party Negotiator | **3PN** |
| Requests for Proposals | **RFQ** |
| Non-Disclosure Agreement | **NDA** |
| Third Party Consultant Rules of Engagement for Field Sales | **Field Sales ROE** |
| Third-Party Logistic Firms | **3PLs** |
| Fourth-Party Logistic Firms | **4PLs** |
| Statement of Undisputed Facts | **SUF** |
| AFMS, LLC | **AFMS** |
| Memorandum of Points and Authorities in Support of United Parcel Service Co.'s Motion for Summary Judgment | **UPS Memo** |
| Declaration of Michelle Burtis | **Burtis Decl.** |
| Declaration of Kye Beverly | **Beverly Decl.** |
| Declaration of Buck McGugan | **McGugan Decl.** |
| Declaration of Kate Guttman | **Gutmann Decl.** |
| Declaration of Michael Moriarty | **Mortiarty Decl.** |
| Declaration of David Edmonds | **Edmonds Decl.** |
| Declaration of Glenda Corwin | **Corwin Decl.** |
| Declaration of Patrick Finan | **Finan Decl.** |
| Declaration of Jerry Beyl | **Beyl Decl.** |
| Declaration of David Kevern | **Kevern Decl.** |

**INTRODUCTION**

AFMS claims that FedEx and UPS violated the antitrust laws by jointly refusing to deal with AFMS and other "third-party negotiators" ("3PNs") who advise shippers on how to negotiate rate discounts from FedEx and other transportation carriers.  AFMS's claims fail, for three main reasons: AFMS lacks antitrust standing, AFMS has no evidence tending to exclude the possibility that FedEx and UPS acted independently, and AFMS cannot show harm to competition in a relevant market.

First, AFMS does not compete against FedEx or UPS and, therefore, lacks standing to bring an antitrust suit.  FedEx sells transportation and related value-added services to shippers.  AFMS and other 3PNs advise shippers on how to negotiate discounted rates for those FedEx transportation services.  No recharacterization of markets can change the central fact that *shippers hire 3PNs to help negotiate __against__ FedEx for transportation services*.  There is no evidence that shippers use FedEx for that service.  As explained in UPS's brief, which FedEx joins, AFMS also fails to meet the other factors in the Ninth Circuit's five-factor test to establish antitrust standing.  *See Amarel v. Connell*, 102 F.2d 1494, 1507 (9th Cir. 1996).

Second, AFMS cannot prove that FedEx and UPS agreed with each other to refuse to deal with 3PNs.  The law is clear that AFMS must have some evidence tending to exclude the possibility that FedEx and UPS acted independently, for legitimate business reasons.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  Undisputed evidence and expert economic testimony show that FedEx had sound business reasons to develop strategies to counter the influence of 3PNs, regardless of whether other carriers did so.  Most importantly,

████████████████████████████████████.  Even so, ████████████

████████████████████████████████████████████████████████

1

1 ███████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████  In the face of FedEx's lack of uniformity there can be

4 no inference that FedEx agreed with UPS on any 3PN policy.  Moreover, ██████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████  These undisputed differences also preclude any inference of

8 agreement between FedEx and UPS to refuse to deal with AFMS and other 3PNs.

9        Third, AFMS cannot show harm to competition in a relevant market.  AFMS

10 must show, among other things, that FedEx's actions caused significant

11 anticompetitive effects on competition as a whole in a relevant market.  AFMS

12 cannot sustain this burden.  AFMS's alleged "shipping consultation services"

13 market does not constitute a valid market, because it includes entities that are not

14 reasonable substitutes for AFMS, such as consultants who advise shippers on

15 matters other than price negotiation, while also excluding advisors that are

16 reasonable substitutes for AFMS, such as shipper's own in-house resources.

17 Furthermore, there is no evidence of market-wide harm to competition in "shipping

18 consultation services."  Undisputed evidence shows that FedEx's various strategies

19 applied only to third-party rate negotiation services, leaving providers of other

20 consulting services to shippers wholly unaffected.  Nor is there any evidence of

21 harm in the form of higher prices or reduced output for "shipping consultation

22 services" or even for a purported market limited to providers of shipping contract

23 negotiation services.  To the contrary, undisputed evidence reveals that many 3PNs

24 continue to provide these services profitably, regardless of the defendants' actions.

25 Allegations of rising shipping transportation rates in general are irrelevant to show

26 the required harm in the market for AFMS's services, however that market is

27 defined.

28        Finally, AFMS's claim that FedEx's non-disclosure agreements with its

customers violate the antitrust laws also fails.  AFMS cannot prove FedEx enjoys market power or that FedEx caused anticompetitive effects in the alleged relevant market.

For the foregoing reasons, the Court should grant summary judgment against AFMS on all claims.

## FACTUAL BACKGROUND

AFMS's Third Amended Complaint alleges that FedEx and UPS compete with AFMS and other 3PNs to provide "shipping consultation services" to shippers, TAC ¶ 11, and that FedEx and UPS agreed to cease working with 3PNs, announced that agreement in similar responses to a question posed at a trade show in October 2009, and "further confirmed" their agreement through "simultaneously released memorandums" on April 23, 2010.  TAC ¶¶ 16-17, 20.  As the following summary of undisputed facts reveals, however, FedEx does not compete with AFMS to advise shippers on negotiating transportation contracts.  It also reveals that ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮  And contrary to AFMS's claim of agreement between FedEx and UPS, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are very different from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ eventually adopted by UPS.

## I.     FedEx

FedEx Corporation ("FedEx") provides shipping and information services through its operating companies.  SUF ¶ 1.  In addition to package delivery, FedEx offers a range of services to help customers improve their business performance and supply chain.  SUF ¶ 2.  These include supply chain assistance, vendor support, customs brokerage assistance, warehousing, and critical inventory management.  SUF ¶.  These services help shippers reduce supply chain expenses, reduce the

3

number of customer service calls, increase operational efficiency, reduce the duration of the order-to-delivery cycle, improve tracking of order fulfillment, and improve reliability.  SUF ¶ 4.

## II.     FedEx's Sales Organization

FedEx has thousands of sales employees who sell FedEx's many services to over 100,000 potential and current business customers.  SUF ¶ 5.  For U.S.-based business customers who spend more than ▮▮▮▮▮ on parcel shipping annually, FedEx's sales force is organized into three divisions: Field Sales, Corporate Sales and Worldwide Services.  SUF ¶ 6.  In late 2009 and early 2010, the Field Sales division served customers with annual shipping expenditures between approximately ▮▮▮▮▮▮▮▮▮▮▮▮, the Corporate Sales division served customers with annual shipping expenditures between approximately ▮▮▮▮▮▮▮▮▮, and the Worldwide Services division served customers with annual shipping expenditures generally above ▮▮▮▮.  SUF ¶¶ 7-9.

FedEx's sales organization negotiates and enters into service agreements with shippers.  SUF ¶ 10.  These agreements include the rates and charges for the various services FedEx agrees to provide.  SUF ¶ 11.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 12.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 13.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 14.  ▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 15.

## III.    FedEx's Sales Strategy

The mission of FedEx's sales organization is to expand the profitable sales of FedEx's various services to business customers.  SUF ¶ 16.  ▮▮▮▮▮▮▮▮

4



SUF ¶ 17.                                    SUF ¶ 18.

As developed and implemented by FedEx's sales force,

SUF ¶ 19.

SUF ¶ 20.

SUF ¶ 21.

As part of this sales strategy,

SUF ¶ 22; *see also*

Beverly Decl. ¶¶ 2-8 (App. Ex. 22 at 22-1 – 22-4)

SUF ¶ 23.

FEDEX'S MEM. OF P. & A. ISO MSJ
2:10-CV-05830-JGB-AJW

**IV.    FedEx Observes Increased 3PN Activity**



. SUF ¶ 24.  3PNs advise shippers on how to secure lower rates and charges when negotiating services agreements from parcel carriers like FedEx.  SUF ¶ 25.

SUF ¶ 26.

SUF ¶ 27.

SUF ¶ 28.

SUF ¶ 29.

SUF ¶ 30.

SUF ¶ 31.

SUF ¶ 32.

6



SUF ¶¶ 33-34.  Similarly,

SUF ¶ 35.

SUF ¶ 36.

SUF¶ 38.  Finally,

SUF ¶ 37.

**V.    FedEx's Corporate Sales and Worldwide Services Groups Develop Formal Strategies Regarding 3PNs.**

SUF ¶ 39.

SUF ¶ 40.

SUF ¶ 41.

SUF ¶ 42.

FEDEX'S MEM. OF P. & A. ISO MSJ
2:10-CV-05830-JGB-AJW



SUF ¶ 43.

SUF ¶ 44.

SUF ¶ 45.

SUF ¶ 46.

,

SUF ¶ 47.

SUF ¶ 48.

SUF ¶ 49.

SUF ¶ 50.

SUF ¶ 52.

SUF ¶ 51.

SUF ¶ 53.

1   ▮▮▮ SUF ¶ 54. ▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮ SUF ¶ 54. ▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮ SUF ¶ 56. ▮

8   **VI.    Communicating Corporate Sales' Strategy**

9   ▮▮▮▮▮▮▮▮

10  ▮▮▮▮ ▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮ SUF ¶ 55. ▮▮▮▮

SUF ¶ 56.  In late October, trade publication Transport Topics published an article which generally reported on the 3PN strategies currently in place ▮▮▮▮▮▮▮. SUF ¶ 58.

▮▮▮▮▮▮▮▮ SUF ¶ 59. ▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ SUF ¶ 60.  The panel – called the Carrier Roundtable – was part of an annual event called the Parcel Forum, a trade show frequented by many 3PNs, including AFMS.  SUF ¶ 61.  The Carrier Roundtable was held on October 7, 2009.  SUF ¶ 62. ▮▮▮▮▮

9

1   SUF ¶ 63.

2

3

4

5   SUF ¶ 64.

6

7   SUF ¶ 65.

8 **VII.   Worldwide Services Partially Adopts 3PN Strategies**

9

10 As early as January 2009,

11   SUF ¶ 66.  In the summer of 2009,

12

13   SUF ¶ 67.

14   SUF ¶ 68.

15

16   SUF ¶ 69.

17   SUF ¶ 70.  In or about

18 December 11, 2010,

19

20   SUF ¶ 71.

21   SUF ¶ 72.

22 **VIII.  Field Sales Develops Its 3PN Strategy**

23

24   on December 20, 2009,

25   SUF ¶ 73.

26

27   SUF ¶ 74.

28   SUF ¶ 75.

10



1  ████████████████████████████████████████████

2  ████████████████  SUF ¶ 90.

3  **IX.    The Strategies In Operation**

4  ███████████████████████████████████

5  ████████████████████████████████████  SUF

6  ¶ 92.  ███████████████████████████████████

7  ████████████████████████████████████████

8  ██████████████████████████████████

9  SUF ¶ 93.  ██████████████████████████████

10  ██████████████████████████████

11  ████████████████████████████████  SUF ¶ 94.

12  ██████████████████████████████

13  ████████████████████████████████

14  ███████████  SUF ¶ 95.

15  █████████████████████████████

16  ████████████████████  SUF ¶ 96.  ███████

17  ██████████████████████████████████  SUF ¶

18  97.  ████████████████████████████

19  ████████████████████████████

20  █████  SUF ¶ 98.  ███████████████████████

21  ████████████████████████████

22  ████████████████████████████

23  SUF ¶¶ 100-01.  ████████████████████

24  ██████████████████████████████████

25  SUF ¶ 102.

26  █████████████████████████████████

27  ———————————————
[1]

28  ███████████████████████████████████████
   ██████████████████████  SUF ¶ 99.

1  SUF ¶ 103.

2

3  SUF ¶ 104.

4

5  SUF ¶ 105.

6  **X.     FedEx Developed Its Strategies Without Knowing What Approach UPS**

7  **Was Taking To 3PNs**

8

9

10

11  SUF ¶ 106.

12

13

14

15

16  *See, e.g.*, McGugan Decl. ¶¶ 24-26 (App. Ex. 38 at 38-7 – 38-8) &

17  Exs. I-O (App. Ex. 38 at 38-31 – 38-46); Edmonds Decl. ¶¶ 4-5 (App. Ex. 29 at 29-

18  2 – 29-3) & Exs. B-C (App. Ex. 29 at 29-6 – 29-7).

19

20

21  SUF ¶ 107.

22

23

24

25  McGugan Dep. 240:6-242:14 (App.

26  Ex. 62); McGugan Decl. ¶ 28 (App. Ex. 38 at 38-9) & Ex. Q at (App. Ex. 38 at 38-

27  49).

28

13

## ARGUMENT

Under Federal Rule of Civil Procedure 56(c), the court "must view the evidence in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In the context of antitrust cases, the Supreme Court has clarified that where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

I.     **Summary Judgment Is Required Because AFMS Does Not Have Standing to Pursue a Sherman Act Section 1 Claim Against FedEx.**

AFMS lacks standing to bring an antitrust claim against FedEx for the same reasons that it lacks standing to bring a claim against UPS. These reasons are explained in detail in Section I of the UPS Memo, which FedEx incorporates herein by reference in its entirety. *See* UPS Memo § I. Most importantly, AFMS has no evidence that it competes with FedEx in the same relevant market, which is required for AFMS to have standing. *See, e.g.*, *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540-41 (9th Cir. 1987); *Legal Econ. Evaluations v. Metropolitan Life Ins. Co.*, 39 F.3d 951, 955-56 (9th Cir. 1994); *Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.*, 788 F.2d 574, 578-79 (9th Cir. 1986); *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 705 (9th Cir. 2001).

First, FedEx's and AFMS's services are not reasonably interchangeable. FedEx does not provide contract negotiation services to shippers; rather, FedEx negotiates with shippers or their representatives in an effort to sell its shipping and value-added services to shippers. Similar to UPS, the information FedEx provides to shippers in the course of negotiating a contract for FedEx's services is not

14

interchangeable with the advice about choosing from multiple carriers' services that AFMS provides to shippers. FedEx does not gather and analyze shippers' data to develop target discounts the shipper should aim to obtain from a carrier, does not develop negotiation strategies for shippers, does not help shippers solicit and compare bids from multiple carriers, does not help shippers analyze carrier proposals, and does not engage in negotiations on behalf of the shippers on the opposite side of the bargaining table from other carriers. SUF ¶¶ 114-19. Testimony from shippers, AFMS employees, and other 3PNs confirms that FedEx's sales representatives' recommendations are not considered a reasonable substitute for AFMS's advice. SUF ¶¶ 120-23. Expert evidence, based on relevant economic principles, further confirms that there is no cross-elasticity of demand between AFMS's and FedEx's services. Burtis Decl. ¶¶ 14-23, 29; (App. Ex. 24 at 24-10 – 24-18; 24-21 – 24-22).

Second, AFMS has no evidence that it competes with FedEx in a relevant market. AFMS's allegation that FedEx and AFMS both gather and analyze shipping data does not show that the two companies compete, because the data gathering and analysis by one of them does not preclude the other from gathering and analyzing the same data. In fact, AFMS and FedEx gather data for different purposes: ███████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████ SUF ¶¶25-26, 124. ████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████ None of those statements provide any evidence that shippers consider FedEx and AFMS to be competitors, which is what AFMS must show.

Third, any analogy to *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158 (9th Cir. 1991), is entirely misplaced as explained in the UPS Memo and by FedEx's and UPS's joint expert Dr. Harris.

15

As the above shows, AFMS cannot establish antitrust injury and this dooms its claim. *See Legal Economic Evaluations v. Metro. Life Ins. Co.*, 39 F.3d 951, 954-956 (9th Cir. 1994) (entering summary judgment where plaintiff could not show antitrust injury); *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985) (stating that establishing antitrust injury has "tremendous significance" for purposes of antitrust standing). In addition, the arguments presented by UPS about the indirect nature of the alleged injury, the speculative nature of the alleged harm, and the complexity of apportioning damages apply with equal force to FedEx. The undisputed facts in support of those arguments concern AFMS rather than the carriers and are the same vis-à-vis each carrier.

For the reasons stated above and in Section I of the UPS Memo, AFMS cannot meet the five-factor test required under the law of the Ninth Circuit to establish standing to bring an antitrust claim against FedEx. *See Amarel v. Connell*, 102 F.2d 1494, 1507 (9th Cir. 1996). Therefore, the Court should grant summary judgment in favor of FedEx.

## II.   Summary Judgment Is Required Because Undisputed Facts Preclude Finding the Conspiracy Required by Sherman Act Section 1.

AFMS's inability to demonstrate, by direct or circumstantial proof, that FedEx and UPS conspired to refuse to deal with 3PNs dooms its Sherman Act Section 1 claim to summary judgment. To establish a violation of Section 1 of the Sherman Act, AFMS must show: (i) "concerted action of more than a single entity" and (ii) a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Toscano v. PGA*, 258 F.3d 978, 983 (9th Cir. 2001). "An agreement can be shown to be in restraint of trade by either direct or circumstantial evidence." *Id.* To survive summary judgment, such evidence must go beyond similar conduct by defendants; rather the plaintiff "must present evidence that tends to exclude the possibility that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588 (internal quotation marks omitted)

16

1   (citation omitted).

2          "The fact that many, if not all, firms in an industry react similarly to a

3   particular practice does not evidence an industrywide agreement when there is a

4   legitimate business purpose for each firm's behavior."  *Richards v. Neilson Freight*

5   *Lines*, 810 F.2d 898, 904 (9th Cir. 1987) (affirming grant of summary judgment to

6   defendants).  Absent evidence tending to show joint agreement rather than

7   individual action, even parallel conduct does not support a finding of conspiracy.

8   *Id.* (citation omitted).  Rather, parallel conduct is "a relevant factor to be considered

9   along with the evidence as a whole. . . ."  *In re Citric Acid Litig.*, 191 F.3d 1090,

10  1102 (9th Cir. 1999) (citation omitted); *see also Ralph C. Wilson Indus., Inc. v.*

11  *Chronicle Broad. Co.*, 794 F.2d 1359, 1365 (9th Cir. 1986) (applying analysis in

12  alleged concerted refusal to deal context).

13         Although at summary judgment AFMS is entitled to rely upon reasonable

14  inferences, *see Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1157 (9th Cir.

15  1988), after fulsome document discovery and more than sixty depositions, even

16  with reasonable inferences, AFMS cannot present evidence tending to exclude the

17  possibility that FedEx and UPS acted independently.  To the contrary, undisputed

18  facts demonstrate unilateral decisions by FedEx and UPS to adopt substantially

19  different approaches toward 3PNs, at different times, and for legitimate business

20  reasons unrelated to conspiracy.

21         **A.     There Is No Direct Evidence of Conspiracy.**

22         There is no direct evidence of an agreement between FedEx and UPS

23  regarding 3PNs.[2]  "[D]irect evidence in a Section 1 conspiracy must be evidence

24  that is explicit and requires *no inferences* to establish the proposition or conclusion

25  being asserted."  *County of Tuolumne*, 236 F.3d at 1155-56 (emphasis added)

26  (citations omitted).  An example of "direct evidence" would be "a document or

27  ─────────────────
    [2] Indeed, the key players in developing strategies at FedEx and UPS unequivocally
28  deny any agreement between FedEx and UPS.  SUF ¶ 135; *see also* Mellon Dep.
    103:11-104:2 (App. Ex. 63); Dickson Dep. 148:7-20 (App. Ex. 50).

1    conversation explicitly manifesting the existence of the agreement in question."

2    *Superior Offshore Int'l, Inc. v. Bristow Group*, No. 11-3010, 490 Fed. Appx. 492, at

3    497-98 (3d Cir. 2012).  "[V]ague statements such as an admonition to competitors

4    to 'play by the rules' do not constitute direct evidence of a conspiracy."  *Id.*

5    (citations omitted).

6         Thus, courts have refused to classify even references to a "truce" or a

7    "gentleman's agreement" among competitors as direct evidence of a conspiracy if

8    the alleged direct evidence was susceptible to a reasonable interpretation that did

9    not show a conspiratorial agreement.  *See Richards*, 810 F.2d at 903 (declining to

10   find that testimony of a "gentlemen's agreement" constituted direct evidence

11   because "at least three interpretations of the deposition testimony are possible"); *In*

12   *re Baby Food Antitrust Litig. ("Baby Food")*, 166 F.3d 112, 127 (3d Cir. 1999)

13   (refusing to infer conspiracy from a reference to a "truce").

14        Nothing uncovered in discovery in this case demonstrates directly–without

15   inference–the existence of a conspiracy as alleged by AFMS.  *See Baby Food*, 166

16   F.3d at 126 ("[C]ommunications between competitors do not permit an inference of

17   an agreement to fix prices unless those communications rise to the level of an

18   agreement, tacit or otherwise.") (citations omitted); *Zoslaw v. MCA Distrib. Corp.*,

19   693 F.2d 870, 885 (9th Cir. 1982) ("[I]n the absence of any indication of agreement

20   or consent to an illegal arrangement, evidence of industry meetings is not sufficient

21   to prove a conspiracy.")

22        Events at the Parcel Forum in October 2009, upon which AFMS relies

23   heavily in its complaint, TAC ¶ 16, are not direct evidence of an agreement.  No

24   matter what was said, by whom, and in response to whom at the Carrier Roundtable

25   panel,[3] it cannot be disputed ███████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ────────────────────────────

     [3] Because who said what at this event is not material, any dispute as to those facts

28   does not preclude granting summary judgment here.  *See Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986).

                                        18

1 ████████████████████

2 ████████████████████████

3 ████ SUF ¶¶ 52, 69. ████████████

4 ██████████████████████████

5 ████████████████████████

6 ████████████████████

7 ████████ *See Hall v. United Air Lines, Inc.*, 296

8 F. Supp. 2d 652, 671 (E.D.N.C. 2003), *aff'd.* 118 Fed. Appx. 680 (4th Cir. 2004)

9 ("The public announcement of a pricing decision cannot be twisted into an

10 invitation or signal to conspire; it is instead an economic reality to which all other

11 competitors must react.") (citation omitted).  Such a communication would have

12 been a logical response because FedEx's position was becoming known in the

13 marketplace.

14 AFMS might also argue ████████████████████

15 ████████████████ is direct evidence of a

16 conspiracy.  But ████████████████████

17 ████████████████████

18 ████████████████[4]  It also states that ██

19 ████████████████████

20 ████████████ Given that ████████████

21 ████████████████████

22 ████ evidences an agreement would require not just an inference, but a big

23 leap.  *See Citric Acid*, 191 F.3d at 1104 & n.8 ("gap" requiring inference remained

24 between alleged smoking gun document and conclusion that defendant participated

25 in conspiracy); *see also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir.

26 1999) (exchange of pricing information among defendants' employees not direct

27 evidence of conspiracy); *Blomkest Fertilizer v. Potash Corp.*, 203 F.3d 1028, 1036-

28 _____

[4] Moriarty Decl. Ex. H (App. Ex. 42 at 42-75 – 42-76).



38 (8th Cir. 2000) (frequent meetings at trade shows and three dozen price verification calls, occasionally involving high-level employees, not direct evidence of conspiracy).

AFMS has not alleged and cannot show that any other communications between FedEx and UPS at the Parcel Forum (or anywhere else for that matter) constitute direct evidence of conspiracy, because those communications do not actually indicate an agreement. *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d at 1103 (mere communications between defendant and other alleged co-conspirators were not sufficient to infer conspiracy without evidence that those communications rose to the level of an agreement); *Am. Chiropractic Ass'n v. Trigon Healthcare*, 367 F.3d 212, 226-27 (4th Cir. 2004) (mere contacts and communications at an advisory panel meeting not sufficient to support inference of anticompetitive conspiracy).

The date of April 23, 2010, on which AFMS heavily relies as when FedEx and UPS "simultaneously released memos" that "confirmed" 3PN policies, is likewise of no significance because they do not –without inferences—evidence an agreement. *See Am. Chiropractic Ass'n*, 367 F.3d at 227 (policies not direct evidence; "both require the rather large inferential leap" that they were drafted pursuant to an agreement). Such an inference is impermissible and unwarranted.

Similarly, evidence that █████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ does not constitute direct evidence of a conspiracy. Rather, it demonstrates continued uncertainty within FedEx about UPS's stance and, in fact, directly *refutes* the existence of any common understanding, much less the required conspiracy. *See Baby Food*, 166 F.3d at 118-20 (gathering information on competitor was not direct evidence of conspiracy).

---

[5] *See, e.g.*, McGugan Decl. ¶¶ 24-26 (App. Ex. 38 at 38-7 – 38-8) & Exs. I-O (App. Ex. 38 at 38-31 – 38-46); Edmonds Decl. ¶¶ 4-5 (App. Ex. 29 at 29-2 – 29-3) & Exs. B-C (App. Ex. 29 at 29-6 – 29-7).

20

**B.      Conspiracy Cannot Be Inferred Because Unilateral Action by FedEx Towards 3PNs Was Justified and Consistent with FedEx's Self-Interest Even if UPS Did Not Adopt a Similar Approach.**

Evidence that competitors in a concentrated industry acted "in parallel" is insufficient to exclude the possibility of independent action, because "conscious parallelism" is a common reaction of "firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" and is "not in itself unlawful." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993).  Accordingly, "mere interdependent parallelism does not establish the contract, combination, or conspiracy required by Sherman Act § 1." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).

In a case such as AFMS's, based on allegedly parallel behavior, to avoid summary judgment the plaintiff's evidence must not only show actual parallel conduct, but also must "tend[ ] to exclude the possibility that the alleged conspirators acted independently." *Matsushita,* 475 U.S. at 588.  AFMS cannot point to any such evidence, because the undisputed facts demonstrate that FedEx's and UPS's actions were motivated by legitimate business reasons and made economic sense for each carrier regardless of the other's conduct.

**1.      FedEx's Conduct Towards 3PNs Was Justified by Legitimate Business Concerns.**

If a plaintiff's allegations of a conspiracy are based solely on circumstantial evidence, the defendant can "rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice." *In re Citric Acid Litig.*, 191 F.3d at 1094 (citations omitted). "The burden then shifts back to the plaintiff to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Id.* at 1094.

FedEx had several independent business reasons to reduce the impact of 3PNs, any one of which is sufficient unilateral justification for FedEx's 3PN strategies.  *See* Burtis Decl. ¶¶ 66-78 (App. Ex. 24 at 24-44 – 24-53) (confirming the economic justifiability of FedEx's independent business motivations for adopting strategies regarding 3PNs).  First, ████████████████████
████████████████████████████████████████████ ████████████████████
████████████████████████ SUF ¶¶ 30, 33, 43, 51; *see also O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1468 (9th Cir.1986) (justifiable to restrict mail order sales because those companies did not provide the customer support that was a necessary part of Apple's marketing strategy).  Second, ████████
████████████████████████████████████████████
████████████████████ SUF¶¶ 37, 43, 77; *see also Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*, 63 F. Supp. 2d 1218, 1240 (E.D. Cal. 1999) (protecting confidential information is a justifiable business motive).  Third, ████████████
████████████████████████████████████████████
████████████████ SUF ¶¶ 34-36; *see also In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 1990 WL 126500, at *14 (D. Ariz. July 25, 1990) (avoiding incurring unnecessary costs is a justifiable reason for business conduct). ████████████████████████████ ¶¶ 38, 44, 82; *see also Richards v. Neilson Freight Lines*, 810 F.2d at 902 (finding that it was consistent with proper business practice for an origin carrier to stop interlining with a local carrier that used the interlining relation to take business from origin carrier).  As these cases reflect, all of these reasons standing alone or together are legitimate reasons for a company to decline to deal with someone unilaterally, precluding an inference of conspiracy.

1

2

3

### 2.    FedEx's Conduct Towards 3PNs Was Consistent with FedEx's Self-Interest Even if UPS Did Not Adopt a Similar Approach.

4

5

6

7

8

9

10

11

12

Parallel conduct, even if it were found here, could not support a finding of conspiracy unless "the allegedly parallel acts were against each conspirator's self-interest, that is, that the decision to act was not based on a good faith business judgment." *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986) (citation omitted).  "[F]irms must have broad discretion to make decisions based on their judgments of what is best for them and . . . should not be second-guessed even where the evidence concerning the rationality of the challenged activities might be subject to reasonable dispute." *See Citric Acid*, 191 F.3d at 1101.

13

14

15

16

17

18

19

AFMS alleges that neither FedEx nor UPS "would have dared to give the other such a huge competitive advantage/opportunity without an understanding that both would terminate dealings with third-party consultants at or about the same time they did." TAC ¶ 20.  To the contrary, the undisputed facts demonstrate that FedEx had good reason to and ██████████████████████████████ ████████████████████  SUF ¶ 51; *see also* McGugan Dep. 157:23-158:6 (App. Ex. 62).  ██████████████████████████████████████████████████

20

21

22

23

██████████████████████████████████████████████████ ██████████████████████  Corwin Dep. 47:23-48:7 (App. Ex. 49); *see also* Burtis Decl. ¶¶ 62-65 (App. Ex. 24 at 24-42 – 24-44) ████████████ ███████████████████████████████████████

24

25

26

FedEx had a legitimate self-interested reason to cease working with 3PNs unilaterally, because ██████████████████████████████████ ███████████████████████████████████████

27

28

1    ████████████████████████████ ▪ Because FedEx's decision to cease

2    working with 3PNs can be justified as a reasonable business response to market

3    conditions, and because FedEx's actions were consistent with its self-interest

4    regardless of UPS's actions, the evidence does not tend to exclude the possibility of

5    independent action and does not, therefore, permit an inference of conspiracy.

6        **C.    Conspiracy Cannot Be Inferred from Parallel Conduct Because**

7           **FedEx's and UPS's Conduct Was Not Parallel.**

8        Furthermore, although proof of parallel conduct would not suffice to defeat

9    summary judgment, here the evidence reveals that FedEx's and UPS's conduct was

10   not even parallel. *See Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46,

11   53-54 (3d Cir. 2007) (summary judgment where plaintiff lacked even evidence of

12   parallel conduct).

13       **1.    FedEx's Various Sales Strategies Differed from UPS's**

14          **Centralized Policy in Substance and Implementation.**

15       AFMS cannot demonstrate parallel conduct tending to exclude the possibility

16   of independent action, because the approaches followed by FedEx and UPS toward

17   3PNs are very different. *See Merck-Medco Managed Care. Inc. v. Rite Aid Corp.*,

18   22 F. Supp. 2d 447, 467 (D. Md. 1998), *aff'd* 201 F.3d 436, (4th Cir. 1999)

19   (granting summary judgment where defendants reached the same decision but at

20   different times and in different ways).

21       FedEx and UPS did not adopt similar strategies regarding 3PNs. ████████

22   ████████████████████████████████████████████████████████████████

─────────────────────

23   [6] AFMS's allegations alone show that FedEx's decision was – at a minimum –
     reasonable at the time made and AFMS has no contrary evidence whatsoever.

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████ █

26   ████████████████████████████ McGugan Decl. ¶ 31 (App. Ex. 38 at 38-9

27   – 38-10). ████████████████████████████ ▌ ████████████████████████

28   ████████████████████████████ Corwin Decl. ¶ 8 (App. Ex. 27 at 27-3);
     Corwin Dep. 98:5-9 (App. Ex. 49).

24



*Compare*, Finan Decl. ¶ 2 (App. Ex. 32 at 32-1) and Beyl Decl. ¶ 3 (App. Ex. 23 at 23-1) with Kevern Decl. ¶ 3 (App. Ex. 35 at 35-1).

*See* SUF ¶ 94, 101, 102, 105.

SUF ¶¶ 165-66.

SUF ¶ 166.

In contrast,

SUF ¶¶ 158, 163-64.

SUF ¶ 153.

SUF ¶ 154.

SUF ¶ 155.  Unlike FedEx,

SUF ¶ 160.

SUF ¶ 158.

SUF ¶ 159.

The following table summarizes important differences in each carrier's approach to working with shippers supported by 3PNs.

| Strategy Characteristics | FedEx | UPS |
|---|---|---|
| Who decides whether carrier will participate in negotiations when a 3PN is involved? | | |
| What criteria determine decision? | | |
| Is there a consistent approach when a 3PN advises the shipper in the background? | | |
| Is the implementation of the policy tracked internally? | | |
| How often does carrier engage in negotiations where 3PNs are involved? | | |
| Does carrier decline to bid for the business if shipper insists on having the 3PN conduct negotiations? | | |
| How does carrier protect confidential pricing information when a 3PN is involved? | | |

## 2. FedEx and UPS Developed Their Strategies and Policy on Different Time Schedules.

Not only do FedEx's and UPS's approaches differ in substance and implementation, but the evidence shows

26

FEDEX'S MEM. OF P. & A. ISO MSJ
2:10-CV-05830-JGB-AJW

1      Contrary to AFMS's contentions, events at the 2009 Parcel Forum's Carrier

2   Roundtable do not support any inference of a conspiracy. ███████████████████████

3   ██████████████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████ SUF ¶¶ 52, 69.  Furthermore, if

6   an agreement had been made at the Parcel Forum, those at FedEx who had not yet

7   adopted a 3PN strategy could have done so with little delay and with such certainty

8   that debate would be unnecessary.  Yet uncertainty and debate continued.

9      FedEx's uncertainty as to how UPS was dealing with 3PNs is reflected in ███

10  ██████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████

13  ███████████████ SUF ¶¶ 73-74. ███████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████ SUF ¶¶ 75-

18  82.  This ████████████████████████████████████████████████████████

19  is not logically consistent with any agreement being formed or confirmed there.[7]

20      Similarly, ███████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████    ███████████████████████████

24  ████████████████████████████████ SUF ¶ 162.  If UPS had an agreement

25  with FedEx, it could have implemented these procedures without delay.

26  ————————————————

27  [7] ██████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████  Dilonardo Dep. 62:5-11
    (App. Ex. 51).

### 3.   FedEx's Decentralized, Bottom-up Decision Making Process Is Inconsistent with Company-wide Agreement with UPS.

The evidence of how FedEx's VPs conceived, elaborated, and implemented their 3PN strategies is inconsistent with any agreement between FedEx and UPS regarding 3PNs. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████  ████████

████████████████████████████████████████

████████████████████████████  Because there has never even been agreement within FedEx on how to act regarding 3PNs, FedEx could not have reached any agreement with UPS on how to do so.

## III.   Summary Judgment Is Required Because AFMS Cannot Demonstrate That the Alleged Agreement Unlawfully Restrained Trade.

Even if this Court finds that AFMS has produced sufficient evidence of an agreement, summary judgment is still required because AFMS cannot prove an *unlawful* restraint of trade, which is necessary to prove a Section 1 Sherman Act claim. *See State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); 15 U.S.C. § 1. "Only those agreements that unreasonably restrain trade will run afoul of the antitrust laws." *Cascades Computer Innovation LLC v. RPX Corp.*, Case No. 12-CV-01143, 2013 WL 316023, at *8 (N.D. Cal. Jan. 24, 2013) (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999)).

### A.   The "Rule of Reason" is the Proper Analysis.

There are two types of analyses used to determine the lawfulness of an agreement between competitors: *per se* and rule of reason. *See National Soc'y of Prof'l. Eng'rs v. United States*, 435 U.S. 679, 692 (1978). A "*per se*" analysis is reserved only for practices which are so plainly anticompetitive and without

1   redeeming virtue as to be conclusively unreasonable.  *See, e.g.*, *United States v.*
2   *Socony-Vacuum Oil Co*., 310 U.S. 150 (1940).  All other types of practices are
3   evaluated under a rule of reason analysis.  The alleged conduct in this case does not
4   meet the high bar required for *per se* analysis, and is properly analyzed under the
5   rule of reason.

6           AFMS alleges that FedEx and UPS engaged in a group boycott.  Three
7   conditions are necessary to classify a group boycott as a *per se* violation: (1) the
8   boycott cuts off access to a supply, facility, or market necessary to enable the
9   victim firm to compete against the boycotting firm(s); (2) the boycotting firm(s)
10  possess a dominant market position; and (3) the practices are not justified by
11  plausible arguments that they enhanced overall efficiency or competition.  *See*
12  *Hahn v. Or. Physicians' Serv.,* 868 F.2d 1022, 1030 (9th Cir. 1988).  None of the
13  three conditions are met in this case.

14          The first is not met because FedEx and UPS do not compete with AFMS.  A
15  *per se* illegal boycott must involve "joint efforts by a firm or firms *to disadvantage*
16  *competitors* . . . ." *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141
17  F.3d 947, 949-50 (9th Cir.1998), *cert denied*, 525 U.S. 875 (1998) (citation
18  omitted) (emphasis in original).  AFMS and the carriers were not horizontal
19  competitors. ████████████████████████████████
20  ████████████████████████████ Burtis Decl. ¶14 (App. Ex. 24 at 24-
21  10 – 24-11).  AFMS claims that FedEx competes in its so-called "shipping
22  consultation" market because it offers advice to shippers on its rates, discounts, and
23  product offerings.  TAC ¶ 6. ████████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████████████
26  ████████████████████████████████████████
27  ████████████████████████████████████████
28  ████████████████████████████████

30

1

2 ████████████████. Burtis Decl. ¶15 (App. Ex. 24 at 24-11 – 24-12); *see also*

3 SUF ¶¶ 113-19. ████████████████████████

4 █████████████████████████████████████

5 ████████████████████████████. SUF ¶¶ 125-26; Burtis Decl. ¶ 15

6 (App. Ex. 24 at 24-11 – 24-12).

7        Additionally, FedEx's economic incentives are incompatible with the idea

8 that it would offer contract negotiation services to shippers.  As Dr. Burtis

9 succinctly explains,

10        FedEx's rational business strategy is to negotiate in its own self-

11        interest, not on behalf of its shipper-customers.  Shippers and

12        FedEx are on opposite sides of a negotiation.  Shippers and

13        FedEx have different incentives as each attempts to negotiate the

14        best deal for itself.  Many shippers recognize the incompatibility

15        of carriers' incentives and the provision of contract negotiation

16        services; this is one of the reasons shippers do not consider the

17        possibility of FedEx offering services as a substitute for AFMS

18        services.

19 Burtis Decl. ¶16 (App. Ex. 24 at 24-12 – 24-13), Ex. 3 (App. Ex. 24 at 24-72 – 24-

20 78).

21        The second condition for *per se* treatment is not met because FedEx and UPS

22 combined have no market power in the alleged market for shipping consultation

23 services.  Burtis Decl. ¶¶ 25, 35-45 (App. Ex. 24 at 24-19 – 24-20, 24-25 – 24-33).

24 *Per se* analysis is inappropriate unless the boycotting party possesses market power

25 or exclusive access to an element in effective competition.  *See id.*; *Hahn,* 868 F.2d

26 1022, 1030.

27        Finally, the third condition is not met because FedEx's strategy toward 3PNs

28 was justified by legitimate business considerations.  *Per se* treatment is reserved for

1    practices that are almost always anticompetitive.  *See Ariz. v. Maricopa County*
2    *Med. Soc'y,* 457 U.S. 332, 344, 349 n. 19 (1982).  As discussed in greater detail
3    above in section II-B, FedEx had a number of independent, legitimate business
4    reasons to reduce the impact of 3PNs because they harmed FedEx's customer
5    relationships.
6        None of the conditions required for *per se* analysis exist in this case.
7    Therefore, this Court must analyze the alleged refusal to deal under the rule of
8    reason.

9    **B.    AFMS's Section 1 Claim Fails Because AFMS Is Unable to Show**
10   **Harm to Competition in a Relevant Market.**

11       Under a rule of reason analysis, AFMS "carr[ies] the initial burden of
12   showing that the challenged conduct has an actual adverse effect on competition as
13   a whole in the relevant market."  *See Tanaka v. Univ. of S. Cal.,* 252 F.3d 1059,
14   1063 (9th Cir. 2001) (citation omitted).  This is a substantial burden, and requires
15   AFMS to demonstrate that FedEx has market power within the relevant market, and
16   that FedEx's conduct has actual anticompetitive effects within that market.  *Id.*  If
17   AFMS succeeds, the burden shifts to FedEx to establish the pro-competitive
18   redeeming virtues of the action.  *See, e.g.*, *Gough v. Rossmoor Corp.*, 585 F.2d 381
19   (9th Cir. 1978).  Once FedEx sustains that burden, it is entitled to summary
20   judgment unless AFMS can show that the same pro-competitive effect could be
21   achieved through an alternative means that is less restrictive of competition.  *Id.*
22   AFMS cannot meet its burden to define a proper relevant market, to show any harm
23   to competition much less market-wide harm, and to show that defendants' conduct
24   was not justified by legitimate business reasons.

25   **1.    AFMS Has Not Identified a Proper Antitrust Market in**
26   **Which Competition Was Harmed.**

27       As a threshold matter, AFMS has not met its burden of defining a proper
28   antitrust market.  In its Third Amended Complaint, AFMS claims the relevant

32

market is "shipping consultation services," which it describes as "entities which advise shippers regarding the delivery of time sensitive, letters, documents, and packages by air or by ground within the United States and to and from the United States to foreign countries." TAC ¶ 6.  Not only does this market definition inaccurately describe AFMS's operation, it is far too broad to be an appropriate market for analysis of an antitrust injury.

The Ninth Circuit has made clear, "For antitrust purposes, defining the product market involves identification of the field of competition: the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).  The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand.  *See Syufy Enters. v. Am.Multicinema, Inc*., 793 F.2d 990, 995 (9th Cir. 1986) (citing *United States v. E.I. duPont de Nemours & Co*., 351 U.S. 377, 394-95 (1956)).  "[T]he fact that the conduct restrained trade in a relevant market is an essential part of a plaintiff's case . . . and the burden of establishing [the market] lies on him."  *Gough v. Rossmoor Corp*., 585 F.2d 381, 385 (9th Cir. 1978), *cert. denied*, 440 U.S. 936 (1979).  Here, AFMS cannot show harm in a relevant market because AFMS's alleged markets are both overinclusive and underinclusive.  Moreover, because AFMS's proposed relevant market includes services that are not close economic substitutes, it fails as a matter of law. *Malaney v. UAL Corp.*, 434 Fed. App'x 620, 621 (9th Cir. 2011); *Equifax, Inc. v. Fed. Trade Comm'n*, 618 F.2d 63, 66-67 (9th Cir. 1980); *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 536 F. Supp. 2d 1191, 1196 (C.D. Cal. 2008).

The "Shipping Consultation" market alleged by AFMS in the Third Amended Complaint – comprising entities that "advise shippers regarding the delivery of time sensitive letters, documents, and packages by air or by ground" – is underinclusive.  A market definition is overinclusive if it improperly includes entities

33

that are not reasonable substitutes for one another.  *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 983 (C.D. Cal. 2012); *see also Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1300 (9th Cir. 1982) (relevant market is properly limited to entities "for which reasonable substitutability in demand" can be shown).  AFMS's broad definition encompasses numerous entities that provide a number of services that AFMS does not provide and thus the services of AFMS and those entities are not reasonable substitutes.  As FedEx's expert Dr. Burtis explains, these companies include conventional asset-based third-party logistic firms ("3PLs"), freight- forwarders, non-asset-based 3PLs, fourth-party logistics firms ("4PLs"), and management consulting firms.  Burtis Decl. ¶35 (App. Ex. 24 at 24-25 – 24-26).  The services provided by these entities are far broader than the 3PN services provided by AFMS and thus should not be included in a properly defined market in which AFMS participates.

On the other hand, the market definition that it appears AFMS's purported expert has embraced – ██████████████████████████████████████████████ ████████████████████ – fails because it is <u>underinclusive</u>.  A market definition is underinclusive where it improperly excludes entities that are reasonable substitutes. *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 983; *see also Newcal Indus.*, 513 F.3d at 1045.  ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████ Castillo Dep. 45:10- 46:18 (App. Ex. 48); Dion Dep. 26:18-27:25 (App. Ex. 52); Burtis Decl. ¶23 (App. Ex. 24 at 24-17 – 24-18) ███████████████████████████████████████████████ ██████████

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

34

**2.    FedEx's Strategies Toward 3PNs Did Not Have a Market-Wide Effect on the Alleged Shipping Consultation Market.**

To rise to the level of a Sherman Act §1 violation, harm must be substantial and affect the market overall, not just a single competitor. *See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir 1989) ("removal of one or a few competitors need not equate with injury to competition"). AFMS cannot show market-wide, substantial effects on the broadly defined "shipping consultation" market alleged in the Third Amended Complaint.

First, FedEx's strategies only applied to specific types of third parties.



SUF ¶ 91.

SUF ¶ 91; see also Corwin Dep. 55:21-56:3; 64:13-25; 81:20-82:2 (App. Ex. 49); Phillips Dep.191:17-192:7 (App. Ex. 68); Moriarty Dep. 93:17-94:6; 175:9-176:3 (App. Ex. 66).

These were the only firms affected by FedEx's strategies.

AFMS's broadly defined "shipping consultation" market would sweep within its boundaries not only the third parties affected by FedEx's strategy, but also the who were not affected by the strategies at all. AFMS, therefore, cannot possibly meet its requirement of showing harm to the overall market when FedEx's strategies only applied to Burtis Decl. ¶¶ 40-52 (App. Ex. 24 at 24-29 –

35

24-37).  To the extent AFMS now claims that ███████████████████

████████████████████████████████████, it still cannot demonstrate that

any of its injury arises from harm to competition rather than its own inability to

compete in the 3PN market.

    Second, ████████████████████████████████████████████

█████████████ AFMS alleges that FedEx and UPS have unlawfully

restrained trade by "boycotting (refusing to deal with) any third-party consultant."

TAC ¶ 24(a).  This allegation is unsupported by the record, however, which reveals

███████████████████████████████████████████████

█████████████████ SUF ¶¶131-32. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ SUF ¶¶131-32.  Based on these undisputed facts, FedEx is not

"boycotting (refusing to deal with) any third-party consultant."

    Third, AFMS has no evidence of an increase in prices or a decrease in output

within the market it has arguably defined.  *See Thurman,* 875 F.2d  at 1373

("Avoiding the need for such elaborate market analysis requires the claimant to

show actual detrimental effects on competition such as output decreases or price

increases caused by the restraint.")  In fact, the evidence demonstrates that FedEx's

3PN strategies have not had a market-wide effect on 3PNs because many 3PNS

continue to provide negotiation services.  *See* SUF ¶133.  Indeed, █████████

████████████████████████████████████████████████

██████████ *See* SUF ¶134.[8]  Based on the continued success of ██████

AFMS cannot demonstrate any market-wide harm to 3PNs.

    Additionally, despite defining the relevant market as the "shipping

_____

[8] For example, ███████████████████████████████████████

████████████████████████████████████ 18:6-20:1; 24:7-26:9,

28:20-31:4 (App. Ex. 47)& Exs. 1327 (App. Ex. 10), 1328 (App. Ex. 11), 1330

(App. Ex. 12).

36

consultation market," AFMS asserts in the Third Amended Complaint that the carrier policies caused an increase in overall shipping prices.  TAC ¶ 24.  AFMS has absolutely no evidence of any causal relationship between FedEx's strategies and any alleged increase in shipping prices.  More importantly, however, an increase in shipping prices is an impact which occurs in the *shipping market*, not AFMS's alleged *shipping consultation market*.  As Judge Morrow determined already, AFMS does not participate in the shipping market and, therefore, cannot use an alleged increase in shipping prices to satisfy its burden at summary judgment.  *See* Dkt. 55, p 19-20.

Finally, AFMS's alleged individual losses are not indicative of harm to the overall market as a whole.  "This limitation on the reach of the Sherman Act is reflected in our repeated injunctions that section one claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market."  *See Les Shockley Racing, Inc.*, 884 F.2d at 508 (collecting cases) (citations omitted).  AFMS's allegations of harm to its operation are not only insufficient to survive summary judgment as a matter of law, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See Theee Movies of Tarzana v. Pacific Theatres, Inc.*, 828 F.2d 1395, 1400 (9th Cir. 1987) (cannot show injury to competition where record reveals that plaintiff's losses were due to its "inability or unwillingness to compete.") ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  SUF ¶134.  Moreover, there is substantial evidence that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  SUF ¶¶127-29.  Therefore, even if AFMS experienced some losses after the alleged conduct occurred, those losses cannot be used to show an injury to competition in the overall market because they are individualized and attributable to other factors.

37

**C.      Summary Judgment Is Required as to Count III Because FedEx's Non-Disclosure Agreements Did Not Harm Competition.**

Count Three alleges that vertical non-disclosure agreements between FedEx and its customers violate Section 1 of the Sherman Act.  For purposes of this claim, there is no allegation of any horizontal agreement among competitors, only vertical agreements entered into by FedEx and its shipping customers.  Vertical agreements are presumptively procompetitive.  Courts have long recognized that vertical restraints have "real potential to stimulate interbrand competition," which is "the primary concern of antitrust law." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 724 (1988) (quoting *N. Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)).  Because of their procompetitive benefits, vertical agreements are presumptively analyzed under the rule of reason test.  *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).

AFMS's claim fails because, as explained above, AFMS is unable to demonstrate that FedEx participates in the "shipping consultation" market, or that if it does, it has sufficient power within that market to have caused any injury to competition.  AFMS's vertical claim also fails because it cannot show that FedEx's requirement of a non-disclosure agreement had anti-competitive effects.  A shipper is always able to move to another carrier if it chooses not to enter into a non-disclosure agreement with FedEx.  FedEx's requirement of a non-disclosure agreement merely protects FedEx from having certain information it deems confidential shared with its direct competitors.  It does not place any unlawful restraint on the ability of the participants of the shipping consultation market to serve their customers.  As a result, AFMS cannot show harm to competition as required to survive summary judgment on Count III of the Third Amended Complaint.

1

## <u>CONCLUSION</u>

Based on the foregoing, FedEx is entitled to summary judgment on Counts I and III of the Third Amended Complaint because AFMS lacks antitrust standing under its new theory, AFMS has no evidence tending to exclude the possibility that FedEx and UPS acted independently, and AFMS cannot show harm to competition in a relevant market from FedEx's strategies or anti-competitive effects from FedEx's requirement of a non-disclosure agreement.

Dated:  May 1, 2013

By:   */s/ Michael E. Gabel*
Michael E. Gabel

Attorneys for Defendant
**FEDEX CORPORATION**

39

## CERTIFICATE OF SERVICE

I am a resident of the State of Tennessee, over the age of eighteen years, and not a party to the within action.  My business address is Federal Express Corporation, 3620 Hacks Cross Road, Building B, 3rd Floor, Memphis, TN 38125.

On May 1, 2013, I served the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FEDEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT – REDACTED VERSION**

| | |
|---|---|
| ☐ | by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below. |
| ☒ | Via Court's ECF Filing System. |
| ☐ | by arranging with First Legal Support Attorney Service to personally deliver the document(s) listed above to the person(s) at the address(es) set forth below. |
| | by placing the document(s) listed above in a sealed envelope with delivery fees provided for, addressed as follows for collection by Federal Express for overnight delivery at Federal Express Corporation, 3620 Hacks Cross Road, Building B, 3rd Floor, Memphis, TN 38125, in accordance with Federal Express Corporation's ordinary business practices. |

## SEE ATTACHED SERVICE LIST

☐  *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  *(Federal)*  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 1, 2013, at Memphis, Tennessee.


 s/ Sandra Walston
Sandra Walston

SERVICE LIST

Maxwell M. Blecher
Alyson Claire Decker
Courtney A. Palko
Blecher and Collins, P.C.
515 S. Figueroa St., Suite 1750
Los Angeles, CA 90071
**Attorneys for AFMS LLC (Plaintiff)**

Charles Thomas Collett, P.C.
3857 Birch Street, Suite 400
Newport Beach, CA 92660
**Attorney for AFMS LLC (Plaintiff)**

Paul T. Friedman
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
**Attorney for United Parcel Service Co. (Defendant)**

Gregory B. Koltun
Sean P. Gates
Douglas J. Beteta
Morrison & Foerster LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
**Attorneys for United Parcel Service Co. (Defendant)**