KENNETH P. EWING *(Pro Hac Vice)*
kewing@steptoe.com
**STEPTOE AND JOHNSON, LLP**
1330 Connecticut Avenue NW
Washington, D.C. 20036-1795
T: (202) 429-6264; F: (202) 429-3902

RICHARD ROBERTS *(Pro Hac Vice)*
rrroberts2@fedex.com
MICHAEL E. GABEL *(Pro Hac Vice)*
megabel@fedex.com
M. KIMBERLY HODGES*(Pro Hac Vice)*
kim.hodges@fedex.com
COLLEEN HITCH WILSON*(Pro Hac Vice)*
chitchwilson@fedex.com
**FEDERAL EXPRESS CORPORATION**
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN. 38125
T: (901) 434-8600; F: (901) 434-4523

**Attorneys for Defendant**
**FEDEX CORPORATION**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AFMS LLC, | Case No. 2:10-cv-05830-JGB-AJWx |
| Plaintiff, | JUDGE JESUS G. BERNAL |
| v. | REPLY MEMORANDUM IN SUPPORT OF DEFENDANT FEDEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT |
| UNITED PARCEL SERVICE CO. and FEDEX CORPORATION, | |
| Defendants. | |
| | Date: August 12, 2013 |
| | Time: 9:00 a.m. |
| | Courtroom: 1 |
| | Complaint Filed: August 5, 2010 |
| | Trial Date: February 4, 2014 |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................. I

TABLE OF AUTHORITIES ..................................................................... III

TABLE OF ABBREVIATIONS ................................................................. V

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 2

I.     Based on the Undisputed Facts, AFMS Cannot Show That It Has Standing ................................................................................................. 2

II.    The Evidence Does Not Support Finding Conspiracy Based on Direct or Circumstantial Evidence ...................................................... 2

    1. Nothing in ▓▓▓▓▓▓▓▓▓▓▓▓▓ Evidences an Agreement ▓▓▓▓▓ l Forum ......... 3

    2. Nothing in ▓▓▓▓▓▓▓▓▓▓▓ Evidence an Agreement ▓▓▓▓▓ ..... 4

    3. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ..... 5

    4. ▓▓▓▓▓▓▓▓▓▓▓▓▓ an Agreement ................... 7

    A.    AFMS Has Not Identified Any Direct Evidence or Conspiracy. ............................................................... 2

    B.    None of AFMS's Alleged Circumstantial Evidence of Conspiracy Tends to Exclude the Possibility That FedEx and UPS Acted Independently, as the Record Evidence Corroborates ............................................................... 8

    1. To Survive Summary Judgment Based on Circumstantial Evidence, AFMS Must Present Evidence That Tends to Exclude the Possibility That FedEx and UPS Acted Independently ............ 8

    2. FedEx and UPS Have Demonstrated That They Have Developed Their Policies Independently, Motivated by Legitimate Business Reasons at the Time They Developed and Adopted 3PN Strategies ............................................... 10

    3. AFMS's "Key and Important Facts" Do Not Tend to Exclude Unilateral Action .................................................................. 13

III.   AFMS Failed To carry Its Burden of Demonstrating That the Alleged Agreement Unlawfully Restrained Trade ...................... 21

    A.    The Court Must Analyze the Alleged Refusal to Deal Under a Rule of Reason .................................................. 21

    1. The Alleged Concerted Refusal To Deal Does Not Meet the Controlling Legal Standard to be Treated As a *Per Se* Violation of the Sherman Act .......................................................... 22

    2. Uncertain economic effects of the alleged restraint preclude the application of a "quick look" analysis ......................... 25

    3. Courts lack a comprehensive experience with similar restraints .. 26

B.  AFMS Has Failed to demonstrate Harm to Competition in the Relevant Market..………………………………………………27

1. AFMS Has Not Proven a Cognizable Antitrust Market …………...28

2. AFMS Has Not Proven Harm to the "Shipping Consultation Market"

C.  AFMS Cannot Prove Harm in its Newly Alleged "Delivery Services Market" …………………………………………..…29

CONCLUSION...........................................................................................30

1

<u>**TABLE OF AUTHORITIES**</u>

2

**CASES**                                                                                    **Page(s)**

3

4

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
141 F.3d 947(9th Cir.1998) ……………………….……………...21, 23

5

6

*Amarel v. Connell*,
102 F.2d 1494 (9th Cir. 1996) …………………………….……..27

7

8

*Arizona v. Maricopa Cnty. Med. Soc'y*,
457 U.S. 332 (1982) ……………………………………….……….21

9

10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) …………………………………………….…13

11

12

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999) ……………………………………..27

13

14

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*,
203 F.3d 1028 (8th Cir. 2000) ………………………….……....…6

15

16

*Cal. Dental Ass'n v. FTC*,
526 U.S. 756, 770 (1999) ………………………………...……25

17

18

*Cal. ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011) …………………………………….…27

19

20

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) …………………………….....…..2

21

22

*Harkins Amusement Enters., Inc. v. General Cinema Corp.*,
850 F.2d 477 (9th Cir. 1988) …………………………………….27

23

24

*Ind. Iron Works, Inc. v. U.S. Steel Corp.*,
322 F.2d 656 (9th Cir. 1963) ……………………………….....…14

25

26

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
884 F.2d 504  (9th Cir 1989) …………………………....…..29

27

28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ……………………………………………………8, 13

*Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*,
   998 F.2d 1224 (3d Cir. 1993) ……………………………………………12

*Richards v. Neilson Freight Lines*,
   810 F.2d 898 (9th Cir. 1987) ……………………...……….…………7, 14, 16

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.*,
   637 F.2d l376 (9th Cir. 1981) …………………………………..………..27

*Smith v. Pro Football, Inc.*,
   593 F.2d 1173 (D.C.Cir.1978) …………………………………...…..…..23

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
   786 F.2d 1400 (9th Cir. 1986) …………………………………….....…10

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) …………………………………..….…28

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006) …………………………………………………….…21

*United States Trotting Ass'n v. Chicago Downs Ass'n, Inc.*,
   665 F.2d 781 (7th Cir.1981) …………………………………………….23

*White Motor Co. v. United States*,
   372 U.S. 253 (1963) ……………………………………………………27

# TABLE OF ABBREVIATIONS

| **Full Name** | **Abbreviation** |
|---|---|
| AFMS, LLC | **AFMS** |
| Declaration of Alyson Decker | **Decker Decl.** |
| Declaration of Buck McGugan | **McGugan Decl.** |
| Declaration of David Edmonds | **Edmonds Decl.** |
| Declaration of David Kevern | **Kevern Decl.** |
| Declaration of Michael Moriarty | **Moriarty Decl.** |
| Declaration of Michelle Burtis | **Burtis Decl.** |
| Declaration of Paul Jordan | **Jordan Decl.** |
| Declaration of Sean Gates | **Gates Decl.** |
| FedEx Corporation | **FedEx** |
| FedEx's Memorandum & Points of Authorities | **FedEx MPA** |
| Non-Disclosure Agreement | **NDA** |
| Requests for Proposals | **RFQ** |
| Statement of Undisputed Facts | **SUF** |
| Third Party Consultant Rules of Engagement for Field Sales | **Field Sales ROE** |
| Third Party Negotiator | **3PN** |
| Third-Party Logistic Firms | **3PLs** |
| United Parcel Service Co. | **UPS** |
| Plaintiff AFMS LLC's Omnibus Opposition to Defendants' Motions for Summary Judgment | **AFMS Brief** |
| UPS's Memorandum & Points of Authorities | **UPS MPA** |

## <u>INTRODUCTION</u>

Rather than meeting its burden on summary judgment, AFMS provides the Court with mere unsupported allegations and innuendo.  Its case requires the Court to ignore a mountain of undisputed and indisputable facts revealing the coherent story of individuals at two companies making carefully considered, independent business choices and instead to accept an implausible story cobbled together from unrelated, stray documents as if they were the only evidence available.

For AFMS to succeed, AFMS needs the Court to ignore a number of facts that are not genuinely disputed:

- FedEx had numerous independent reasons for adopting 3PN strategies ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████.  *See* FedEx SUFs 29-38.  UPS also had independent reasons for doing so.  *See* UPS MPA at 4-12.

- ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████.  *See* FedEx SUF 29; AFMS SUF 16-18.

- ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████me.  *See* FedEx SUFs 49-57, 69; Jordan Decl. ¶¶ 4-5 (Supp. App. Ex. 8 at 8-2.).  █████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

1

- ████████████████████████████████████
████████████████████████████████
████████████████   *See* FedEx SUF 49-57, 69, 71, 73.
- There was an extensive deliberative process that took place among those at FedEx, ████████████████████████████████████████
████.  *See* FedEx SUFs 42-46, 49-52, 73, 75, 81.
- ████████████████████████████████████
████████████████████████████████████
██████████████████████.  *See* FedEx SUFs 54-56, 64-65, 86-91.

AFMS's story depends on the Court disregarding these undisputed facts and instead embracing as true many assertions that AFMS cannot prove or which are based on faulty logic.  At the motion to dismiss stage, AFMS was able to survive based on allegations alone.  But its case – built on unsupported facts and unwarranted inferences – cannot survive summary judgment, where a plaintiff must provide more than just allegations but also evidence to support them.

## ARGUMENT

### I.  BASED ON THE UNDISPUTED FACTS, AFMS CANNOT SHOW THAT IT HAS STANDING.

AFMS has failed to respond adequately to the arguments in the UPS and FedEx MPAs, as explained in UPS's Reply.  Nor has it established genuine issues of material fact regarding standing.  FedEx joins in and adopts UPS's argument.

### II. THE EVIDENCE DOES NOT SUPPORT FINDING CONSPIRACY BASED ON DIRECT OR CIRCUMSTANTIAL EVIDENCE.

#### A. AFMS Has Not Identified Any Direct Evidence of Conspiracy.

AFMS does not dispute that "direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires *no inferences* to establish the proposition or conclusion being asserted."  *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236

2

1  F.3d 1148, 1155-56 (9th Cir. 2001) (emphasis added) (citations omitted).[1]

2         1.  <u>Nothing in</u> █████████'s █████████████████████████ an

3         <u>Agreement Between FedEx and UPS at the Parcel Forum.</u>

4  Contrary to AFMS's contentions, *see* [AFMS Brief at 12], ████████

5  ████████████████████████████████████████████, *see*

6  Ex. 2044 (Supp. App. Ex. 1 at 1-1 – 1-2), contain no direct evidence of any

7  agreement. ████████████████████████████████

8  ████████████████████████████████████

9  ████████████████████████████████████████

10  ████████████████████████████████████

11  ██████████████████████████████

12  ████████████████████████████████████

13  ████████████████████████████████████

14  ██████████████████████████████

15  ████████████████████████████████████

16  ████████████████████████████████

17  ████████████████████████████ Thus AFMS makes no

18  claim that ████████████ themselves evidence agreement – whether directly or

19  circumstantially.

20         Instead, AFMS points ████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

---

[1] Because none of the alleged direct evidence tends to exclude the possibility that FedEx and UPS acted independently, but rather is consistent with permissible competitive behavior, it cannot be used to defeat summary judgment even if considered as circumstantial evidence. *See In re Citric Acid Litig ("Citric Acid"),* 191 F.3d 1090, 1095 (9th Cir. 1999) (noting that where circumstantial evidence is as consistent with permissible competitive behavior as with illegal conspiracy, it does not tend to exclude the possibility of legitimate behavior ).



1

2

3

4

5

6

7

8

9

10   There was no expression of agreement by UPS with FedEx,

11

12

13

14   . Taylor Dep.

15   42:21-25 (Sup App. Ex 28).  Thus this evidence is not direct evidence of

16   agreement.[2]

17       2.   <u>Nothing in</u>           <u>Evidence An</u>

18         <u>Agreement Between FedEx and UPS.</u>

19   Nor are

20   direct evidence of agreement.

21

22   —

23   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24   [2] Nor does it qualify as circumstantial evidence tending to exclude the possibility
that FedEx and UPS acted independently.

25   Edmonds July 17, 2013 Decl. ¶ 4 (Supp. App. Ex 9 at 9-

26   2); Kevern July 18, 2013 Decl. ¶ 4 (Supp. App. Ex 10 at 10-2); Moriarty Decl. ¶ 23
(App. Ex 42 at 42-6 – 42-7). As courts have recognized, "communications between

27   competitors do not permit an inference of an agreement to fix prices unless those
communications rise to the level of an agreement, tacit or otherwise." *In re Baby*

28   *Food*, 166 F.3d 112, 126 (3d Cir. 1999) (citations omitted).

1 ███████████████████████████████████

2 █████████████████████████████████████

3 ████████████████████████████████████

4 ██████████████████████████████████████

5 ██████████████████████████████████████

6 █████████████████████████████████████████

7 *See* Taylor Dep. 46:9-47:14 (Sup App. Ex 28); *see also* Kevern Decl. ¶ ¶ 3, 5-7

8 (Sup App. Ex 10 at 10-1 – 10-3); Edmonds Decl. ¶¶ 2-3, 5-6 (Sup App. Ex 9 at 9-1

9 – 9-2).[3] ████████████████████████ s cannot qualify as direct

10 evidence of an agreement between FedEx and UPS regarding 3PNs.

11          AFMS also egregiously misrepresents a ███████████████████

12 █████████████████████████████████████

13 ███████████████████████████████

14 ██████████████████████████████████

15 ███████████████.  *See* Edmonds Dep. 42:21-23 (Supp. App. Ex 17)█████

16 ██████████████████████████████████████

17 ██████████████████████████████████████

18 ████████████.  It therefore cannot be direct evidence of an agreement between

19 FedEx and UPS to cease participating in bids with shippers who hired 3PNs.

20          3.  <u>Nothing in</u> ████████████████████████

21          ██ <u>Evidence An Agreement Between FedEx and UPS.</u>

22          AFMS points to █████████████████████████████

23 ████████████████████████, *see* AFMS Brief at 12-13, but even

24 assuming they reflect communications between UPS and FedEx, none is direct

25 evidence of agreement.  *See County of Tuolumne*, 236 F.3d at 1156 (direct

26 ─────────────────────

27 [3] ████████████████████████████████████████

28 ████████████████████████████ rn.

communication between competitors is not direct evidence of conspiracy where it does not evidence a "meeting of minds"). 

*See Blomkest Fertilizer, Inc. v. Potash Corp. of Sask., Inc.*, 203 F.3d 1028, 1034 (8th Cir. 2000) ("To survive summary judgment, there must be evidence that the exchanges of information had an impact on pricing decisions.") (citations omitted); *Citric Acid*, 191 F.3d at 1105 ("Evidence of sporadic exchanges of shop talk among field representatives who lack pricing authority" is insufficient to survive summary judgment.") (citations and internal quotations omitted).

The earliest is

9. *See* Ex. 2623 (Supp. App. Ex 7 at 7-1).

See FedEx SUFs52-56, 69, 71, 73.

_____

4

*See* Faby Dep. 133:7-134:21 (Supp. App. Ex 18) (

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ███████████████████████████████████████████████████

5 ████████████████████████████ ?"[5]  *See* Ex. 2105 (Supp. App. Ex 3 at 3-1). ██

6 ████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 █████████████████████████████████████████████████████.

10    4. Nothing in ███████████████████████ Evidences an Agreement

11       Between FedEx and UPS.

12       The fourth and final piece of supposedly "direct evidence" likewise fails to

13 provide evidence of an agreement. ████████████████████████████

14 ████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████

16 ████████████████████████████████████████ " *See* Decker Decl. Ex. 53

17 (Ex. 2705). ████████████████████████████████████████

18 ██████████████████████████████████████ *See* AFMS

19 Brief at 13. ██████████████████████████████████████

20 ████████████████████████████████████████████

21 ██████████████████████████████████████████████████████

22 ████████████████████ That is because while the phrase could potentially

23 "document a horizontal agreement among the defendants," it also "might refer to

24 industrywide acceptance of the competitive reality" that the challenged conduct was

25 an industry-wide practice. *See Richards v. Neilson Freight Lines*, 810 F.2d 898,

[5] AFMS misquotes McGugan as making the affirmative statement ████████████████

████████████████████████████████████████████. McGugan Decl. ¶¶

25-26 & Exs. M-O (App. Ex 38 at 38-7 -38-8, 38-40 – 38-46).

1  903 (9th Cir. 1987).[6]

2  **B. None of AFMS's Alleged Circumstantial Evidence of Conspiracy**

3  **Tends to Exclude the Possibility That FedEx and UPS Acted**

4  **Independently, as the Record Evidence Corroborates.**

5  1. To Survive Summary Judgment Based on Circumstantial Evidence,

6  AFMS Must Present Evidence That Tends to Exclude the

7  Possibility That FedEx and UPS Acted Independently.

8  Without direct evidence of conspiracy, AFMS must point to adequate

9  circumstantial evidence, which AFMS has not done.  The Supreme Court has made

10  clear that when relying on circumstantial evidence, an antitrust plaintiff must show

11  more than parallel conduct by defendants; rather the plaintiff "must present

12  evidence that tends to exclude the possibility that the alleged conspirators acted

13  independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

14  588 (1986) (internal quotation marks omitted) (citation omitted).  Within the Ninth

15  Circuit, courts obey this requirement by applying a two-step analysis when a

16  plaintiff rests its case entirely on circumstantial evidence.  "First, the defendant can

17  rebut an allegation of conspiracy by showing a plausible and justifiable reason for

18  its conduct that is consistent with proper business practice.  The burden then shifts

19  back to the plaintiff to provide specific evidence tending to show that the defendant

20  was not engaging in permissible competitive behavior." *Citric Acid*, 191 F.3d at

21  1095 (citations and quotations omitted).

22  _____

23  [6] Nor could this qualify as circumstantial evidence tending to exclude the possibility that FedEx and UPS acted independently. ██████████████

24  ██████████████████████████████████████████████

25  ██████████████████████████████████████

26  ████████████████ *See* Mau Dep. 56:10-57:5 (██████████████████████

27  ██████████████████████); Ex. 2578 (Supp. App Ex. 5 at 5-1) ("██████████████████████████████

28  ████████████████████████████████████████

1    Despite this clear language, AFMS urges the Court to ignore the Supreme

2   Court's and the Ninth Circuit's instructions.  First, AFMS attempts to argue, relying

3   on *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust*

4   *Litigation* ("*In re Petroleum*"), 906 F.2d 432 (9th Cir. 1990), that a plaintiff relying

5   on circumstantial evidence does not need to introduce evidence tending to exclude

6   the possibility of independent action.  *See* AFMS Brief at 11 (citing *In re Petroleum*

7   as authority for analyzing cases based on circumstantial evidence).  AFMS's

8   argument is wholly without merit, as the Ninth Circuit already rejected the position

9   urged by AFMS over 10 years ago.  *See Citric Acid*, 191 F.3d at 1096-97.

10  (dismissing references to circumstantial evidence in *In re Petroleum* as *dicta* and

11  confirming that "The requirement that a plaintiff who relies solely on circumstantial

12  evidence of conspiracy . . . must produce evidence tending to exclude the

13  possibility that defendants acted independently follows directly from the Supreme

14  Court's opinion in *Matsushita* and is, as we have explained, well-established in

15  both this circuit, as well as in our sister circuits.") (citations omitted).

16    Second, disregarding a long line of Ninth Circuit decisions cited by the *Citric*

17  *Acid* court*,* AFMS also quotes from a treatise and a decision by the Second Circuit

18  to suggest that this burden of production should be lighter where "the conspiracy is

19  economically sensible for the alleged conspirators to undertake."  *In re Publ'n*

20  *Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d Cir. 2012).  Neither the quotation nor the

21  Second Circuit's decision are relevant here.  The treatise quote helped the Second

22  Circuit explain it was error for the lower court in that case to impose the improperly

23  high burden on plaintiffs to "*dispel* the possibility that defendants acted

24  independently." *Id.* (emphasis added).[7]  Here AFMS has not even offered evidence

25  that *tends to exclude* the possibility of unilateral action.  Nothing in *Publication*

26  ───────────────

[7] Furthermore, urging the Court to consider whether "the conspiracy is
27  economically sensible for the alleged conspirators to undertake" hurts AFMS,
because the evidence shows that FedEx and UPS did not need to conspire each
28  decide to pursue 3PN strategies.

9

*Paper* or any Ninth Circuit case suggests that a plaintiff can survive summary judgment without producing sufficient evidence tending to exclude the possibility that defendants acted independently. *Citric Acid*, 191 F.3d at 1096-97.

Finally, AFMS contends that FedEx and UPS bear the burden of demonstrating that they would have pursued their strategies unilaterally. *See* AFMS Brief at 15, 21. This turns the long-standing burden-shifting of Rule 56, as applied to antitrust cases by the Supreme Court in *Matsushita*, on its head. As the Ninth Circuit made clear over a decade ago, after defendants show plausible and justifiable reasons for their conduct that is consistent with proper business practices, "[t]he burden then shifts back to the plaintiff to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *In re Citric Acid*, 191 F.3d at 1094 (citing several Ninth Circuit cases); *see also, e.g.*, *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986) (requiring plaintiff basing conspiracy on allegedly parallel conduct to show that "the allegedly parallel acts were against each conspirator's self-interest.") (citation omitted).

        2. <u>FedEx and UPS Have Demonstrated That They Developed Their Policies Independently, Motivated by Legitimate Business Reasons at the Time They Developed and Adopted 3PN Strategies.</u>

As required by the first step of the *Citric Acid* analysis, FedEx and UPS have demonstrated that they each developed their strategies or procedures independently, for legitimate business reasons. *See Cnty. of Tuolumne*, 236 F.3d at 1156 (defendant can "rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice").

████████████████████████████████████████████████████████████

████████████████████████████████████

FedEx pointed to unrefuted evidence of several independent reasons ████

████████████████████████████████████████████████████████████

1  ██████████████████████████████████████████████████████

2  █████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ████████████████████████████████████████.  These justifications

6  were contained in contemporaneous business documents drafted and relied upon as

7  part of the development of the strategies and were stated as reasons by various

8  individuals throughout the process as driving FedEx's 3PN strategies:

9  • ████████████████████████████████████████

10  ██████  *See* FedEx SUF 38.

11  • █████████████████████████████████

12  ███████████████████████████████████████████████████████

13  ████████████████████████████████████████

14  ██████████████████████████████████████████

15  ██████████████████████████████████.  *See* FedEx SUFs 42-44.

16  • ██████████████████████████████████████████

17  ████████████████████████████  *See* FedEx SUFs 55-56.

18  • ███████████████████████████████████████████

19  ███████████████████████████████████████

20  ████████████  *See* FedEx SUFs 64-65.

21  • █████████████████████████████████████████

22  ███████████████████████████████████████████.

23  *See* FedEx SUF 77.

24  • ████████████████████████████████████████

25  ███████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ███████████████████████████████████████████

28  ███████████████████  Moriarty Decl. ¶¶ 27-28 & Ex. J (App. Ex. 42 at 42-8,

11

1    42-83, 42-90, 42-91).

2         Likewise, UPS has presented undisputed evidence that ███████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ██████████████████████████████████. *See* UPS MPA at

7    4-8. ████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████. *Id*. at 9-12.

11        AFMS does not seriously contest the truth or legitimacy of these unilateral

12   justifications.  It relegates to a footnote a general contention that they are all

13   "pretextual" without pointing to any supporting evidence and focuses solely (and

14   incorrectly,████████████████████████████████████████████

15   ████████████████████████████████████████ *See* AFMS

16   Brief at 14, n.9.  AFMS's even less serious attempt to characterize deposition

17   testimony about and expert economic analysis of the unilateral and legitimate

18   reasons as after-the-fact, self-serving, and unsupported by evidence, *see*  AFMS

19   Brief at 15, is wholly undercut by the citations above and in FedEx's and UPS's

20   MPA and SUF to unrefuted, contemporaneous evidence.  *See Petruzzi's IGA*

21   *Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1245 (3d Cir. 1993) (expert

22   testimony properly considered on issue of whether conduct was against economic

23   self-interest); *Citric Acid*, 191 F.3d at 1106 (although expert evidence regarding

24   whether conduct was against economic self-interest was unpersuasive, it was

25   considered).[8]  More importantly, AFMS points to no evidence raising doubts that

26   ─────────────────────
     [8] In addition to the testimony on this point from Dr. Burtis, UPS's expert, Dr. Kalt,
27   also testified ████████████████████████████████████████████████████

28   ████████████████████████████████. *See* Kalt
     Decl. ¶¶ 6-12 (filed by UPS).

these reasons were discussed and relied upon by the relevant decision-makers at FedEx and UPS during the relevant time period.[9]

In light of the substantial contemporaneous evidence, and the consistent deposition testimony further documenting FedEx's and UPS's legitimate reasons for adopting strategies for minimizing the interference of 3PNs with its customer relationships, AFMS's claim that these justifications are in any way pretextual are without foundation. The evidence shows that the actions were consistent with unilateral, legitimate business purposes. As the Supreme Court has held, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of conspiracy." *Matsushita*, 475 U.S. at 586.

### 3. AFMS's "Key and Important Facts" Do Not Tend to Exclude Unilateral Action

In the face of these unilateral and legitimate justifications, AFMS has the burden to point to "specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Citric Acid*, 191 F.3d at 1095. Its efforts to do so with a "timeline" chart of "key and important facts," *see* AFMS Brief at 16-22, fail, because all are either unsupported by the record or do not have a tendency to disprove that FedEx and UPS acted unilaterally. This section addresses the "key and important facts" individually, while the next addresses them together as part of the timeline as a whole.

First, AFMS ███████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████ *See* AFMS Brief at 20-21. Even if true, however, this does not tend to exclude unilateral action by each in doing so. To the contrary, after the exit of "an aggressive competitor and price

---

[9] Nor does AFMS's discussion of the Supreme Court's clarification of the motion to dismiss standard have any relevance to this motion. *See* AFMS Brief at 15 (distinguishing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).

cutter," *see* AFMS Brief at 16, and facing identical market situations with (purportedly) only one competitor, it can be expected that the two companies might both react similarly by changing their behavior toward 3PNs, and indeed, might adopt similar behavior without any agreement. *See Richards*, 810 F.2d at 904 ("The fact that many, if not all, firms in an industry react similarly to a particular practice does not evidence an industrywide agreement when there is a legitimate business purpose for each firm's behavior."); *see also Ind. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 660-62 (9th Cir. 1963) (no inference of conspiracy where external factors explained parallel conduct). ████████████████ ████████████████████████████████████████████ ████████████████████████████████████ AFMS concedes that an objective factor such as the number of competitors, rather than an unproven agreement, may be the reason for the parallel actions by FedEx and UPS.[10]

More generally, ███████████████████████████████ ███████████████████████████ cannot serve as grounds to infer agreement, because they were reacting to changes in the marketplace that impacted them similarly. AFMS does not dispute that there were significant changes in the shipping market in 2009. AFMS admits that DHL exited the United States domestic market at the end of 2008 and ████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████. *See* AFMS SUF 16-18; *see also* Ex. 2053 (Supp. App. Ex 2 at 2-1) ("████████████

_____

[10] ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████. *See* Dickson Dep. 13:6-14:7 (Sup App. Ex 14) (████████████████████████████████████ ████████████████████████████████s); Moriarty Dep. 226:15-227:13 (Sup App. Ex 23) (████████████████████ ████████████████████████████████████

14

1

2

3

4 ■■■■. FedEx SUF 29. ■■■■■■■■■■■■■■■■

5

6 ■■■■■■■■■■ *See* Kupperberg Decl. Ex. A at A-10 ■■■

7 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■); *see also*

8 UPS SUF 33. ■■■■■■■■■■■■■■■■

9

10 ■■■■■■■■■■■■■■. That both FedEx and UPS ■■■■

11 ■■■■■■■■■■■■■■■■■r does not tend to

12 exclude the possibility that they acted independently consistent with legitimate

13 business conduct.

14      Second, the ■■■■■■■■■■■■■■■■■■■

15 ■■■■■■■■ do not tend to exclude unilateral action.  All of them are as

16 consistent with unilateral conduct as they are with conspiracy. ■■■■■■

17

18

19 ■■■■■■■■ Similarly, the actual documents relating to the additional

20 communications that AFMS refers to as statements of *assurances* (AFMS Brief at

21 15) and statements providing *confirmation* (AFMS Brief at 15), ■■■■■■

22

23 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■. ■■■

24

25

26

27

28



1    ███████████████████████████[11]████████████████████

2    ████████████████████████████████████████████████

3    ████████████████████████████████████████

4    ██████████████████████████████████████

5    ██████████████████████████ *See* McGugan Decl. ¶

6    26 & Ex. O (App. Ex. 38 at 38-8, 38-46) ███████████████

7    ████████████████████████████████████████████████

8    ████████████[12]██████████████████████████████████

9    ████████████████████████████████████████████

10   █████████████████████████████████████████████████

11   █████████████████████████████████████████████

12   ████████ *ee Richard*, 810 F.2d 898 at 903 (recognizing reference to

13   "gentlemen's agreement" could "document a horizontal agreement among the

14   defendants," but also "might refer to industrywide acceptance of the competitive

15   reality" that the challenged conduct was an industry-wide practice); *Citric Acid*,

16   190 F.2d at 1104 (citing *Richards* in concluding that document evidencing plan not

17   to seek "gain share" at accounts affecting competitor were too equivocal to prevent

18   summary judgment).  This is particularly true here, ██████████████████

19   [11] *See* McGugan Decl. ¶ 24 & Ex. L (App. Ex. 38 at 38-7, 38-36) ███████

20   ████████████; McGugan Decl. ¶¶ 25-26 & Exs. M, N (App. Ex. 38 at 38-7 – 38-8, 38-

21   40 – 38-45) ██████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ███████████); Edmonds Decl. ¶ 4 & Ex. B (App. Ex. 29 at 29-2, 29-6

24   ███████████████████████); McGugan Decl. ¶ 24 &

25   Ex. K (App. Ex. 38 at 38-7, 38-35) (██████████████████████████████

26   [12] Whether the decision for ████████████████████████████████

27   ████████████████████████████ as Plaintiff insists,
     there is no evidence that FedEx knew that UPS had or was going to adopt a policy

28   as of either of those dates.

█████████████████████████████████████████████████████

████████. Decker Decl. Ex. 53 (Ex. 2705); *see In re Baby Food Antitrust Litig.*, 166 F.3d at 120.

AFMS's attempt to portray the decision █████████████████████████ ████████████████████████ as a "test" subject to change after communications with UPS, *see* AFMS Brief at 21, is entirely unsupported.  AFMS points to no evidence suggesting that FedEx viewed this decision as such a test.  Indeed, there is unrefuted evidence to the contrary.  (Decker Decl.  Ex. 45 (Moriarty Depo. at 105:11-107:10) ████████████████████████ █████████████████████████████  Moreover, the fact – admitted by AFMS – ██████████████████████████ █████████████████████████████████  strongly undercuts AFMS's argument that such acts would be contrary to unilateral self-interest of FedEx. Unrefuted evidence shows that ███████████████████████████s group combined to generate nearly █████████ in revenue in FY 2010.  Jordan Decl. ¶¶ 4-5 (Supp. App. Ex. 8 at 8-2.)  Certainly, AFMS cannot point to that unilateral act as evidence tending to exclude that FedEx was willing to change its past practices toward 3PNs without UPS's agreement.

Unrefuted evidence demonstrates, contrary to AFMS's claim, ████████ █████████████████████████████████████ █████████████████████████████████████ ██████████████████████████████ █████████████████████████████████████ █████████████████████████████████████ ████████████████  *See* FedEx SUF 86-88.████████

███████
████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████  *See* FedEx SUF 146.  In any event, even near coincidence in time of these

3 two actions does not tend to exclude unilateral action.  Regardless of its statistical

4 likelihood,[13] ████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████.  There is no unusual coincidence in time from

12 which to infer any agreement.

13      Finally, AFMS ignores ████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████  Unable to refute this substantial evidence,

16 AFMS simply denies ████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 AFMS Brief at 22. ████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████  *See* FedEx SUF 92-105.

23 ████████████████████████████████████████████

24

25 [13] AFMS's supposedly expert analysis should be disregarded for failure to meet admissibility standards. *See also* Memorandum in Support of Motion in Limine to Exclude Expert Report and Testimony of David Campbell (Dkt. 168).

26 [14] Collectively, Worldwide Sales and Corporate Sales generated $████████ in

27 revenue during FY10 (June 2009 through May 2010).  Jordan Decl. ¶¶ 4, 6.  (Supp. App. Ex. 8 at 8-2.)Field Sales generated a ████████████████████ during

28 that same time frame.  Jordan Decl. ¶ 7.    (Supp. App. Ex. 8 at 8-2.)

18

1    inconsistent with the existence of an agreement between FedEx and UPS.  *See* Kalt

2    Decl. ¶ 40. ████████████████████████████████████████████████████

3    █████████████████████████████████████████████

4    █████████████████████████████████████████████

5    ████████████████████████████████████████████

6    ██████████████████████████████████████████████

7    ████████████████████████████████████[15]████████████████████

8    ██████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ██████████████████████████████████*ee* Ex. 2177 (Decker Decl. ¶47, Exh

13   45).  Discovery did not reveal a single document or any FedEx testimony

14   purporting to announce, describe, or reference █████████████████████████

15   ███████████████████████████████████████████████.

16   ████████████████████████████████████████████

17   █████████████████████████████████████████

18   ██████████████████████████████████████████

19   ██████████████████████████████████████████████

20   ████   These substantial differences between the manner in which FedEx and UPS

21   implemented and administer their respective approaches to 3PNs reflect that their

22   approaches are not merely "different on paper," but result in different outcomes

23   totally inconsistent with any agreement.

24       Thus none of UPS's "key and important facts" is of a kind that itself tends to

25   exclude unilateral action by FedEx and UPS, particularly in light of the changes

26   that AFMS admits were happening in the industry at the time.

27   ─────────────────────

28   [15] AFMS and FedEx agree that ████████████████████████████████████████████████████.  *See* FedEx SUF 73.

1        **4.  Even Taken Together and As Part of Its Timeline AFMS Has No**

2            **Factual Support That Tends to Exclude Unilateral Action.**

3        Nor do the facts asserted by AFMS add up to a whole that satisfies AFMS's

4   burden to "specif[y] specific evidence tending to show that the defendant was not

5   engaging in permissible competitive behavior." *Citric Acid*, 191 F.3d at 1095.

6        AFMS's timeline fails to address, and offers no evidence contradicting, the

7   undisputed meetings and events documenting FedEx's and UPS's independent

8   decision-making processes.  In fact, simple perusal fails to reveal any parallels in

9   the decision-making of FedEx and UPS.  AFMS does not point to any evidence of

10  an actual date (or even month) of agreement or a communication between FedEx

11  and UPS from which the terms of any agreement could be discerned.  ███

12  ████████████████████████████████████████

13  ████████████████████████████████████████████

14  *see* AFMS Brief at 19, ████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19      AFMS attempts to weave the few events and unsupported "facts" into what it

20  hopes is a plausible narrative: ███████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████

27  ███████████   The first problem with this narrative is that everything described

28  could have happened without any agreement between the two companies.  The

second problem is that it does not refute the evidence of legitimate, unilateral justifications for the policies and strategies that both companies had, does not contend with the admitted industry-wide changes that created similar incentives to change behavior toward 3PNs, and does not acknowledge or refute the important differences between the two companies' behaviors.  In other words, even taken as a whole, the evidence falls short of that required to avoid summary judgment.

## III.  AFMS FAILED TO CARRY ITS BURDEN OF DEMONSTRATING THAT THE ALLEGED AGREEMENT UNLAWFULLY RESTRAINED TRADE.

### A. The Court Must Analyze the Alleged Refusal to Deal Under a Rule of Reason.

Because it has no evidence of harm to the alleged relevant market for consultations services, AFMS's attempts to avoid showing harm to the relevant market by claiming that the alleged concerted action by FedEx and UPS is a per se violation of the Sherman Act fails. *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 949-950 (9th Cir.1998), *cert denied*, 525 U.S. 875 (1998).  AFMS's argument lacks merit.

AFMS does not dispute the following conclusions of law: (i) the rule of reason is the presumptive or default standard for determining whether a restraint of trade is unreasonable and therefore violates the Sherman Act[16]; (ii) *per se* condemnation is appropriate only for restraints with clearly predictable anticompetitive effects[17]; (iii) *per se* condemnation is appropriate only "[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it,"[18] and (iv) *Adaptive Power*

---

[16] *See, e.g., Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10, (1997));

[17] *See, e.g., State Oil*, 522 U.S. at 10; AFMS brief 7:19-21

[18] *See, e.g,. Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982); AFMS brief 8:3-6

FEDEX's REPLY MEM. ISO MSJ; 2:10-CV-05830-JGB-AJW

*Solutions* supplies the test to determine whether a particular concerted refusal to deal should be condemned as a *per se* violation of the antitrust laws.[19]

AFMS's attempt to present the alleged restraint in a way that would make it look like one that is inherently anticompetitive fails.  AFMS cannot demonstrate that the alleged boycott has the characteristics required by the Ninth Circuit to be condemned as anticompetitive *per se*.  Furthermore, the effects of the alleged restraint *in the relevant market* are not straightforward and neither are the issues surrounding the definition of the relevant market and the position of the alleged boycotting parties vis-à-vis the target.  Given the presence of these novel and complex issues, the Court should apply the default rule of reason in analyzing the reasonableness of the alleged boycott.

**1. The Alleged Concerted Refusal To Deal Does Not Meet the Controlling Legal Standard To Be Treated As a *Per Se* Violation Of the Sherman Act.**

AFMS has failed to show that under Ninth Circuit law, the alleged restraint is a *per se* violation of the Sherman Act.  To do so, AFMS must show that, *in the alleged relevant market*, (i) the alleged boycott by AFMS and UPS precludes AFMS from competing against them, (ii) FedEx and UPS possess market power, and (iii) there is no plausible efficiency argument for UPS's and FedEx's conduct.  AFMS cannot show that all three prongs of this test are satisfied and its attempt to

---

[19] To be *per se* illegal, a boycott must have all of the following three characteristics: (1) the boycott cuts off access to a supply, facility, or market necessary to enable the victim firm to compete; (2) the boycotting firm possesses a dominant market position; and (3) the practices are not justified by plausible arguments that they enhanced overall efficiency or competition. *Adaptive Power Solutions*, 141 F.3d at 949-50 (9th Cir.1998), *cert denied*, 525 U.S. 875 (1998) (quoting *Nw. Wholesale Stationers,* 472 U.S. 284, 293-94) (affirming a decision by this Court granting summary judgment in favor of defense contractors against a defense subcontractor who alleged a *per se* boycott by the prime contractors and reasoning that the sub-contractor was not part of the market in which the prime contractors competed with each other).

1    do so by describing anticompetitive acts by FedEx and UPS on one market and

2    market power on another market should not succeed.

3         The first prong of the test is not satisfied because FedEx and UPS do not

4    compete with AFMS in selling shipping consultation services to shippers and,

5    therefore, ██████████████████████████████████████████████████████████████

6    ████████████████████████ cannot be viewed as an attempt to disadvantage a

7    competitor.[20]  AFMS claims that the alleged concerted refusal to deal allegedly

8    curtailed its ability to compete against FedEx and UPS but deliberately evades

9    specifying the market in which this alleged competition is being restrained.

10   ██████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████

12   This claim is contrary to the record in this case. █████████████████████████

13   ████████████████████████████████████████████████████

14   ███████████████████████████████████ *See* FedEx SUF 120. ██████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████ *See* Burtis Decl. ¶¶ 12-23 (App. Ex. 24 at 24-9 –

17   24-18); Williams Decl. ¶ 20; Harris Decl. ¶¶ 23-32.  Finally, common sense

18   suggests that ████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████

20

---

21   [20] The Ninth Circuit has emphasized that a *per se* illegal boycott must involve "joint

22   efforts by a firm or firms *to disadvantage competitors* ...." *Adaptive Power
     Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 949-950 (9th

23   Cir.1998), *cert denied*, 525 U.S. 875 (1998) (quoting *Northwest Wholesale
     Stationers,* 472 U.S. 284, 293-94) (emphasis added by the Ninth Circuit).  *See also*,

24   *United States Trotting Ass'n v. Chicago Downs Ass'n, Inc.*, 665 F.2d 781, 788 (7th
     Cir.1981) ("to be *per se* illegal, a boycott must have two essential elements: (1) at

25   least some of the boycotters were competitors of each other and the target, and (2)
     the boycott was designed to protect the boycotters from competition with the

26   target"); *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1178 (D.C.Cir.1978) (noting

27   that a common attribute of *per se* illegal boycotts is "a concerted attempt by a group
     of competitors at one level to protect itself from competition from non-group

28   members who seek to compete at that level").

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ████████████████ Engagement of AFMS or another 3PN by a shipper to conduct

4 negotiations on the shipper's behalf cannot and does not deprive the carrier of the

5 ability to provide that sales pitch to a prospective customer – AFMS only prevents

6 the carrier from providing the sales pitch directly to the shipper.  No amount of

7 parsing of the definition of consulting services can obscure the fact that the

8 relationship between the carriers, FedEx or UPS, on the one hand, and AFMS on

9 the other hand is not one of rivals to be the single provider of shipping consultation

10 services to a shipper.  Rather AFMS, acting on behalf of shippers, sits on the

11 opposite side of the table from carriers in negotiating shipping agreements.[21]

12        AFMS has not pointed to any evidence that FedEx or UPS has any role in

13 determining the price level *in the shipping consultation market* and has thus

14 conceded that the carriers do not have market power in that market.  AFMS

15 characterizes FedEx and UPS as having "dominant market power" and being in a

16 "duopoly in *the market for domestic express delivery*" (emphasis added), but that is

17 a different market from the one on which AFMS allegedly suffers competitive

18 harm.  More importantly, the market for domestic express delivery is one in which

19 AFMS clearly does not participate, as it does not deliver any packages.   *Per se*

20 analysis is inappropriate unless the boycotting party possesses market power or

21 exclusive access to an element in effective competition.  *See, e.g. Adaptive Power*

22 *Solutions,* 141 F.3d 947.

23

24 ─────────────────────

[21] ██████████████████████████████████████████

25 ████████████████████████████████████████████████

   ███████████ *See* FedEx SUFs 120, 125; *see also, e.g.*, Ex. 304 at AFMS LIT

26 0065179; ████████████████████████████████████████████

27 See Ex. 62 to Sean Gates Decl.

28

1    Finally, AFMS does not dispute that FedEx's concerns ████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████ constitute plausible reasons

4    for FedEx's unilateral decision to refrain from bidding for the business of shippers

5    who used 3PNs in certain instances.  Thus, AFMS concedes that the third prong of

6    the *Adaptive Power Solutions* test - lack of any efficiency justification - is not

7    satisfied either.  In sum, the alleged concerted refusal to deal by FedEx and UPS

8    does not exhibit any of the characteristics necessary to condemn it as a *per se*

9    violation of the Sherman Act.

10        **2. Uncertain economic effects of the alleged restraint preclude the**

11        **application of a "quick look" analysis**

12    Contrary to AFMS's assertion, the economic effects of the alleged boycott

13    are far from clear.  A "quick look" analysis is appropriate where "the great

14    likelihood of anticompetitive effects can easily be ascertained." *Cal. Dental Ass'n*

15    *v. FTC*, 526 U.S. 756, 770 (1999).  In a quick look analysis "[t]he object is to see

16    whether the experience of the market has been so clear, or necessarily will be, that a

17    confident conclusion about the principal tendency of a restriction will follow from a

18    quick (or at least quicker) look, in place of a more sedulous one." *Id.* at 781.

19    AFMS alleges two effects of FedEx's and UPS's alleged anticompetitive

20    conduct: it claims that the conduct has "all but eliminated TPCs from the market"

21    and that the conduct has resulted in higher prices to shippers and consumers.  The

22    first contention is not supported by the record, ████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████. *See* FedEx SUFs 131-32, 134; *see also* FedEx

25    Mem. at 35-37.  The second contention is yet another attempt by AFMS to link

26    conduct in one market – the shipping consultation services market – to a price

27    movement occurring in an entirely different market – the market for delivery of

28    express packages – a market in which AFMS does not participate.   Had the

25

1    economic effects of FedEx's and UPS's alleged boycott been so obvious as to

2    warrant a quick look analysis, no such elaborate and vague cause-and-effect

3    assertions would have been needed.

4         AFMS does not cite any court decision where conduct similar to the one it

5    alleges has been condemned after a quick look analysis.  In *Safeway*, which did not

6    involve a refusal to deal, the Ninth Circuit rejected a quick look analysis because

7    defendants had advanced plausible efficiency enhancing explanations for their

8    conduct and plaintiffs failed to show that the anticompetitive effects were obvious,

9    making it impossible for the court to "reach a confident conclusion that the

10   principal tendency of the [restraint] is to restrict competition."  651 F.3d 118, 1138.

11   The court in *Yellow Pages* – the other case cited by AFMS in its discussion of quick

12   look analysis – does not opine on the applicable standard for determining the

13   illegality of the restraint at issue.

14        This Court should not be confused by AFMS's erroneous cause-and-effect

15   claims which link alleged wrongful conduct in one market with effects on a

16   different market to make the alleged restraint appear obviously anticompetitive.

17   Furthermore, the court should give due weight to the evidence on record regarding

18   the numerous viable participants in the market for shipping consultation services

19   and should reject AFMS's call for a "quick look" analysis.

20        **3.  Courts lack a comprehensive experience with similar restraints**

21        The circumstances, details and logic of the alleged restraint are complex and

22   unusual, which calls for application of the default rule of reason to determine

23   whether the alleged restraint is unreasonable.  Contrary to AFMS's assertion, courts

24   do not have experience with restraints similar to the one alleged here.

25        The alleged restraint is not easily analogized to any of the restraints in the

26   case law on which AFMS relies.  First, the restraint in *Yellow Pages* differs from

27   the one alleged here in many respects as described in UPS's Reply Memorandum –

28   which FedEx joins.  Most importantly, the consulting services the *Yellow Pages*

1  plaintiffs provided did not involve price negotiation, which is the core of AFMS's

2  services, and the defendant company was a monopoly publisher of the directory,

3  unlike FedEx and UPS, which compete between themselves and also with regional

4  carriers, USPS and others for providing shipping services to shippers.  Second, the

5  restraints in *Amarel v. Connel*, *Big Bear Lodging*, and *Harkins* all involve

6  horizontal competitors as both boycotted and boycotting parties.  That is, the

7  boycott's effect is to disadvantage market participants that compete directly with at

8  least some of the boycotting firms.[22]  The relationship between FedEx and UPS on

9  one side and AFMS as the alleged target of the boycott on the other side is not one

10  of direct horizontal competitors in the market for shipping consultation services.

11  Rather, they are always on opposite sides of a transaction.  Finally, in cases where

12  the boycotting and boycotted firms are not horizontal competitors, courts have

13  generally rejected the application of the *per se* standard.[23]  Accordingly, the Court

14  should apply the rule of reason in analyzing the alleged restraint of competition.

### B. AFMS Has Failed to Demonstrate Harm to Competition in the Relevant Market.

17  _____

[22] *Amarel* involves two types of farmers who produce rice – independent farmers and farmers organized in cooperatives. The rice they produce ends up in the market for milled rice via different routes, but clearly, a sale of rice milled in an independent mill to a purchaser displaces a sale of rice milled by a cooperative mill to the same purchaser. See *Amarel v. Connell*, 102 F.2d 1494 (9th Cir. 1996). Similarly, at issue in *Big Bear Lodging* was a boycott by one set of resort operators (the association members) disadvantaging another set of resort operators (non-members).  *See Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096 (9th Cir. 1999).  In *Harkins* a film exhibitor complained about being boycotted by other film exhibitors who belonged to a motion picture "split" to which the plaintiff did not belong. *See Harkins Amusement Enters., Inc. v. General Cinema Corp.*, 850 F.2d 477 (9th Cir. 1988).

[23] *See Adaptive Power Solutions,* 141 F.3d 947 (involving alleged boycott by two prime contractors against a sub-contractor); *Ron Tonkin Gran Turismo, Inc. v. Fiat Distribs., Inc.,* 637 F.2d l376 (9th Cir. 1981) (involving a distributor and dealer of Fiat cars).  Two other decisions on which AFMS relies, *Cal. ex rel. Harris v. Safeway, Inc.,*651 F.3d 1118 (9th Cir. 2011) and *White Motor Co. v. United States,* 372 U.S. 253 (1963) did not involve a boycott and mentioned boycotts in dicta as an example of restraints that are often presumed anticompetitive.

27

1      AFMS has utterly failed to meet its burden of "showing that the challenged

2  conduct has an actual adverse effect on competition as a whole in the relevant

3  market." *See Tanaka v. Univ. of S. Cal.,* 252 F.3d 1059, 1063 (9th Cir. 2001)

4  (citation omitted).  To avoid summary judgment, AFMS had to demonstrate that

5  FedEx has market power within the relevant market, and that FedEx's conduct has

6  actual anticompetitive effects within that market.  *Id.*  It failed to do so.

7            **1.  AFMS Has not Proven a Cognizable Antitrust Market.**

8      First, AFMS has not met its threshold burden of demonstrating that it has

9  defined a proper antitrust market.  AFMS claims the relevant market is "shipping

10  consultation services," which it describes as "entities which advise shippers

11  regarding the delivery of time sensitive, letters, documents, and packages by air or

12  by ground within the United States and to and from the United States to foreign

13  countries."  TAC ¶ 6.  As both FedEx and UPS explained in their supporting

14  memoranda, the market AFMS has attempted to define is both overinclusive and

15  underinclusive.  *See* FedEx MPA pp. 32-34; UPS MPA p.33, n36; p. 35, n 38-39.

16      AFMS has presented no argument or evidence to rebut the evidence

17  presented by both FedEx and UPS that AFMS's alleged market is over-inclusive

18  and sweeps within its borders services which are non-interchangeable.  AFMS has

19  also failed to rebut the evidence provided by UPS and FedEx that its alleged market

20  is under-inclusive in that it fails to include the shippers' in-house resources.  FedEx

21  MPA p. 34; UPS MPA p. 35 nn.38-39.  ████████████████████████████

22  ████████████████████████████████████████████████████

23  ██████████████████████████████  *See* UPS Br. 35 n. 38-39; UF

24  83-84.  AFMS's only response is to claim without support that in-house resources

25  cannot be included because they are "inadequate" and that 3PNs provide "better"

26  services.  ████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████.  *See* UPS SUF ¶¶ 83-84.  Therefore, AFMS cannot sustain

1   its alleged market and cannot survive summary judgment.

2          **2.  AFMS Has not Proven Harm to the "Shipping Consultation**

3             **Market."**

4        AFMS has not provided any evidence of harm to the "Shipping Consultation

5   Market," a critical element of its claim.  To prove harm to competition, AFMS was

6   required to show a market-wide increase in prices, decrease in output, or

7   diminished quality.  Instead of meeting this burden, AFMS merely posits that the

8   3PN strategies put in place by the shippers have "virtually eliminated every

9   consultant from the market."   AFMS Opp. Brief pp. 38-39.  Not only is this

10   assertion from AFMS unsupported by the record, it is controverted by the clear

11   evidence that: (1) ████████████████████████████████████████

12   ████████████████████ FedEx SUFs 131-32; (2) ████████████████

13   █████████████████████████████████████████

14   Burtis Decl. ¶¶ 40-52 (App. Ex. 24 at 24-29 – 24-37); and (3) ████████

15   ████████████████████████████████████

16   ████████████████████████. *See* FedEx SUFs 133-134.

17        However, even if AFMS had been able to produce evidence that "nearly 100

18   percent" of consultants had been foreclosed by the carrier policies, this would still

19   be insufficient to survive summary judgment.  "[R]eduction of competition does not

20   invoke the Sherman Act until it harms consumer welfare." *Rebel Oil*, 51 F.3d at

21   1433.  *See also Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504,

22   508 (9th Cir 1989) ("removal of one or a few competitors need not equate with

23   injury to competition").  Because AFMS has failed to provide evidence of market-

24   wide, substantial harm to its improperly defined "shipping consultation" market, it

25   cannot survive summary judgment.

26       **C. AFMS Cannot Prove Harm in its Newly Alleged "Delivery Services**

27         **Market."**

28        AFMS also asserts that the alleged "boycott" of 3PNs has harmed its newly

29

1    asserted "delivery services market." In doing so, AFMS claims that "shippers have

2    been forced to pay higher prices for the shipping of time-sensitive letters,

3    documents, and packages."  AFMS Brief at 40.  This argument is completely

4    unsupported and cannot save AFMS from summary judgment.

5           First, AFMS has presented no evidence of an actual increase in prices.

6    Instead, AFMS merely speculates that without the involvement of 3PNs, price

7    competition is "weakened."  However, AFMS provides this court with no evidence

8    that any shipper experienced an increase in actual rates paid as a direct result of the

9    absence of 3PNs from the negotiation process.  Second, AFMS again ignores the

10   clear evidence that 3PNs are not excluded entirely. ███████████████████

11   ███████████████████████████████████████████████

12   ███████████████████████████████████████████████████

13   ███████████████████████████████████████████

14   █████████████████

15          Finally, even if AFMS had been able to demonstrate harm to the "delivery

16   services" market, it has improperly asserted this argument for the first time in its

17   response to FedEx's Motion for Summary Judgment.  In its Third Amended

18   Complaint AFMS asserted that its claimed relevant market was the market for

19   "shipping consultation services."  AFMS cannot now, in a last-ditch attempt to

20   survive summary judgment, change its mind about what relevant market is at issue.

21                              **CONCLUSION**

22          Based on the foregoing and the argument and authorities contained in its

23   Memorandum in Support of Summary Judgment, FedEx is entitled to summary

24   judgment on Counts I and III of the Third Amended Complaint because AFMS

25   lacks antitrust standing under its new theory, AFMS has no evidence tending to

26   exclude the possibility that FedEx and UPS acted independently, and AFMS cannot

27   show harm to competition in a relevant market from FedEx's strategies or anti-

28   competitive effects from FedEx's requirement of a non-disclosure agreement.

30

1

2

3   Dated:  July 22, 2013

4                                              By:    */s/ Colleen Hitch Wilson*

5                                                     Colleen Hitch Wilson

6                                                     Attorneys for Defendant

7                                                     **FEDEX CORPORATION**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I am a resident of the State of Tennessee, over the age of eighteen years, and not a party to the within action.  My business address is Federal Express Corporation, 3620 Hacks Cross Road, Building B, 3rd Floor, Memphis, TN 38125.

On July 22, 2013, I served the within document(s):

**FEDEX'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND ACCOMPANYING DOCUMENTS UNDER SEAL**

| | |
|---|---|
| ☐ | by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below. |
| ☒ | Via Court's ECF Filing System. |
| ☐ | by arranging with First Legal Support Attorney Service to personally deliver the document(s) listed above to the person(s) at the address(es) set forth below. |
| ☒ | by placing the document(s) listed above in a sealed envelope with delivery fees provided for, addressed as follows for collection by Federal Express for overnight delivery at Federal Express Corporation, 3620 Hacks Cross Road, Building B, 3rd Floor, Memphis, TN 38125, in accordance with Federal Express Corporation's ordinary business practices. |

**SEE ATTACHED SERVICE LIST**

☐  *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  *(Federal)*  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 22, 2013, at Memphis, Tennessee.


s/ Colleen Hitch Wilson
Colleen Hitch Wilson

32

FEDEX's REPLY MEM. ISO MSJ; 2:10-CV-05830-JGB-AJW

SERVICE LIST

Maxwell M. Blecher
Alyson Claire Decker
Courtney A. Palko
Blecher and Collins, P.C.
515 S. Figueroa St., Suite 1750
Los Angeles, CA 90071
**Attorneys for AFMS LLC (Plaintiff)**

Charles Thomas Collett, P.C.
3857 Birch Street, Suite 400
Newport Beach, CA 92660
**Attorney for AFMS LLC (Plaintiff)**

Paul T. Friedman
Ruth N. Borenstein
Stacey M. Sprenkel
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
**Attorney for United Parcel Service Co. (Defendant)**

Gregory B. Koltun
Sean P. Gates
Douglas J. Beteta
Morrison & Foerster LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
**Attorneys for United Parcel Service Co. (Defendant)**