PAUL T. FRIEDMAN (CA SBN 98381)
PFriedman@mofo.com
RUTH N. BORENSTEIN (CA SBN 133797)
RBorenstein@mofo.com
STACEY M. SPRENKEL (CA SBN 241689)
SSprenkel@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

GREGORY B. KOLTUN (CA SBN 130454)
GKoltun@mofo.com
SEAN P. GATES (CA SBN 186247)
SGates@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
UNITED PARCEL SERVICE CO.

**[Public Version – Unredacted Version Filed Under Seal – Subject to Protective Order]**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

AFMS LLC,

Plaintiff,

v.

UNITED PARCEL SERVICE CO. and FEDEX CORPORATION,

Defendants.

Case No. CV10-5830 JGB (AJW)

**REPLY BRIEF IN SUPPORT OF UNITED PARCEL SERVICE CO.'S MOTION FOR SUMMARY JUDGMENT [FRCP 56]**

Date: August 5, 2013
Time: 9:00 a.m.
Ctrm: 1

Hon. Jesus G. Bernal

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii
TABLE OF ABBREVIATIONS .......... vi
INTRODUCTION .......... 1
ARGUMENT .......... 3
I. AFMS FAILS TO SHOW THAT IT CAN PROVE STANDING .......... 3
A. AFMS Fails to Raise a Triable Issue on Antitrust Injury .......... 3
1. Application of the Correct Legal Test Shows That UPS Does Not Participate in the Allegedly Restrained Market .......... 3
2. There Is No Genuine Dispute That UPS Does Not Provide Services Reasonably Interchangeable with Services Provided by AFMS .......... 7
a. AFMS Concedes Facts Showing That UPS Does Not Provide Negotiation Services .......... 7
b. AFMS Fails to Create a Triable Issue That AFMS and UPS Provide "Advice" That Is Reasonably Interchangeable and Has Cross-Elasticity of Demand .......... 9
3. AFMS Fails to Raise a Triable Issue That Any Competing Services Are in the Relevant Market That Was Allegedly Restrained .......... 12
4. AFMS Cannot Base Standing on Supposed Participation with UPS in a Shipping Delivery Market .......... 14
5. The Ninth Circuit Has Rejected Standing in Similar Two-Market Cases .......... 15
B. The Other Standing Factors Confirm That AFMS Lacks Standing .......... 17
II. AFMS FAILS TO SHOW THAT IT CAN PROVE HARM TO COMPETITION .......... 18
A. AFMS Cannot Avoid Proving a Relevant Market .......... 18
B. AFMS Cannot Prove the Market It Alleged .......... 19
C. AFMS's Attempt to Redefine Its Alleged Consulting Market Fails .......... 21
1. AFMS Is Bound by the Market Alleged in Its Complaint .......... 21
2. AFMS's Narrowed Definition Is Not Legally Cognizable .......... 21
D. AFMS Fails to Show Harm in the Shipping Consultation Market .......... 22
E. AFMS Cannot Show Harm in a "Delivery Services Market" .......... 23
III. AFMS FAILS TO SHOW THAT IT CAN PROVE CONSPIRACY .......... 26

A. AFMS Did Not Proffer Direct Evidence of an Agreement ............... 27

B. AFMS Fails to Proffer Evidence Tending to Exclude the Possibility That UPS Acted Independently ....................................... 28

CONCLUSION ........................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) .......... 7, 15

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
92 F.3d 781 (9th Cir. 1996) .......... 6, 18

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) .......... 5, 6

*Bhan v. NME Hosps., Inc.*,
772 F.2d 1467 (9th Cir. 1985) .......... 1, 3, 7

*Blue Bell Co. v. Frontier Ref. Co.*,
213 F.2d 354 (10th Cir. 1954) .......... 30

*Business Elecs. Corp. v. Sharp Elecs. Corp.*,
485 U.S. 717 (1988) .......... 19

*California ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011) .......... 19

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) .......... 17

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977) .......... 18

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
438 U.S. 59 (1978) .......... 7

*Equifax, Inc. v. Fed. Trade Comm'n*,
618 F.2d 63 (9th Cir. 1980) .......... 22

*Exhibitors' Servs., Inc. v. Am. Multi-Cinema, Inc.*,
788 F.2d 574 (9th Cir. 1986) .......... 12

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003) .......... 17

*In re ATM Fee Antitrust Litig.*,
686 F.3d 741 (9th Cir. 2012), *pet. for cert. filed*,
No. 13-63 (July 11, 2013) .......... 7

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .......... *passim*

*In re Late Fee & Over-Limit Fee Litig.*,
528 F. Supp. 2d 953 (N.D. Cal. 2007) .......... 29

*In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012) .......... 24

*In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262 (N.D. Cal. 1988), *aff'd*, 895 F.2d 1417 (9th Cir. 1990) .......... 20

*Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656 (9th Cir. 1963) .......... 29

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) .......... 14-15

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) .......... 18

*Legal Econ. Evaluations v. Metro. Life Ins. Co.*, 39 F.3d 951 (9th Cir. 1994) .......... 7, 15-16

*Lucas v. Bechtel Corp.*, 800 F.2d 839 (9th Cir. 1986) .......... 16, 17

*M.A.P. Oil Co. v. Texaco Inc.*, 691 F.2d 1303 (9th Cir. 1982) .......... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 26

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) .......... 23

*Mkt. Force, Inc. v. Wauwatosa Realty Co.*, 906 F.2d 1167 (7th Cir. 1990) .......... 30

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484 (9th Cir. 1991) .......... 4, 19, 21

*Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889 F.2d 524 (4th Cir. 1989) .......... 20

*Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137 (N.D. Cal. 2007) .......... 21, 24

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) .......... 9

*Paladin Assoc., Inc. v. Mont. Power Co.*, 328 F.3d 1145 (9th Cir. 2003) .......... 19

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) .......... 21, 22, 23, 25

*Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717 (7th Cir. 2004) .......... 24

*Richards v. Neilsen Freight Lines*,
810 F.2d 898 (9th Cir. 1987) .......... 28

*Roland Mach. Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) .......... 26

*Sacramento Valley, Chapter of the Nat'l Elec. Contractors Ass'n v. IBEW, Local 340*,
888 F.2d 604 (9th Cir. 1989) .......... 16, 17

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) .......... 10, 20

*United States v. Int'l Harvester Co.*,
274 U.S. 693 (1927) .......... 26-27, 29

*W. Parcel Express v. UPS of Am., Inc.*,
65 F. Supp. 2d 1052 (N.D. Cal. 1998),
*aff'd*, 190 F.3d 974 (9th Cir. 1999) .......... 25

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .......... 21

*White Motor Co. v. United States*,
372 U.S. 253 (1963) .......... 18

*Wilcox v. First Interstate Bank of Or., N.A.*,
815 F.2d 522 (9th Cir. 1987) .......... 27, 29

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*,
951 F.2d 1158 (9th Cir. 1991) .......... 5

## TABLE OF ABBREVIATIONS

| Full Name | Abbreviation |
|---|---|
| AFMS LLC | **AFMS** |
| FedEx Corporation | **FedEx** |
| United Parcel Service Co. | **UPS** |
| Third-Party Negotiator | **3PN** |
| Memorandum of Points and Authorities in Support of United Parcel Service Co.'s Motion for Summary Judgment | **UPS Br.** |
| Plaintiff AFMS LLC's Omnibus Opposition to Defendants' Motions for Summary Judgment | **AFMS Opp.** |
| Declaration of Alyson C. Decker in Support of Plaintiff AFMS LLC's Omnibus Opposition to Defendants' Motions for Summary Judgment | **Decker Decl.** |
| Declaration of Sean P. Gates in Support of UPS's Motion for Summary Judgment | **Gates Decl.** |
| Declaration of Sean P. Gates in Support of UPS's Reply Brief on Motion for Summary Judgment | **Gates Reply Decl.** |
| Declaration of Donald Faby in Support of UPS's Motion for Summary Judgment | **Faby Decl.** |
| Declaration of Kathleen Gutmann in Support of UPS's Motion for Summary Judgment | **Gutmann Decl.** |
| Declaration of Robert Harris in Support of UPS's Motion for Summary Judgment | **Harris Decl.** |
| Declaration of Clifford Kupperberg in Support of UPS's Motion for Summary Judgment | **Kupperberg Decl.** |
| Declaration of Darrell Williams in Support of UPS's Motion for Summary Judgment | **Williams Decl.** |
| UPS Statement of Undisputed Facts | **UF** |
| UPS Response to Plaintiff's Statement of Genuine Disputes with UPS's Material Facts | **RPGD** |

## TABLE OF ABBREVIATIONS

| Full Name | Abbreviation |
| --- | --- |
| FedEx Response to Plaintiff's Statement of Genuine Disputes with FedEx's Material Facts | **RPGD FedEx** |
| UPS Response to Plaintiff's Statement of Undisputed Facts | **RPF** |

**INTRODUCTION**

Unable to rebut UPS's arguments and evidence, AFMS reverses course once again. This time, AFMS attempts to redefine its alleged relevant market and to resurrect a market for time-sensitive package delivery—even though Judge Morrow expressly ruled that AFMS does not have antitrust standing based on that market, and AFMS dropped the delivery market in its subsequent amended complaints. AFMS's inability to settle on a theory of its case even at the summary judgment stage underscores that AFMS has no viable theory and no viable antitrust claims.

***AFMS lacks standing***. AFMS walked a fine line to avoid dismissal at the pleading stage. After Judge Morrow concluded that AFMS's first amended complaint failed to plead facts to establish antitrust standing, AFMS for the first time alleged a purported relevant market for shipping consultation services. But now that discovery is complete, an avalanche of evidence establishes that AFMS cannot prove standing under controlling legal standards.

AFMS acknowledges that to have standing, it must prove that AFMS and UPS both participate in the relevant market. AFMS contends that UPS participates in the market by competing with AFMS, but it fails to demonstrate that the firms compete. Under the Ninth Circuit's governing standard, set forth in *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467 (9th Cir. 1985), AFMS must prove that UPS offers services reasonably interchangeable with those provided by AFMS. *But AFMS concedes material facts establishing that UPS does not offer services reasonably interchangeable with AFMS's services*. (RPGD 2-6, 19-23, 60.) Those concessions preclude AFMS from establishing standing as a matter of law, regardless of the relevant market AFMS now asserts.

Unable to meet the governing standard, AFMS contends that it can have standing even though it is not a "traditional competitor" of UPS. *None of AFMS's cited cases so holds*. The parties in *Yellow Pages* provided "essentially identical" services. The plaintiffs in *Amarel* were in a joint-venture-type relationship with,

and therefore stood in the shoes of, participants in the relevant market. And *Ad Management*—which Judge Morrow concluded was inapposite—does not even deal with the definition of a competitor. *AFMS points to no case holding that an alleged competitor that neither competes directly with an antitrust plaintiff, nor provides reasonably interchangeable services, participates in the same market as the plaintiff*. The Court should decline AFMS's invitation to invent a new test for antitrust standing. Because AFMS cannot prove the threshold standing requirement, UPS is entitled to summary judgment on all of AFMS's claims.

***AFMS cannot prove harm to competition.*** All of AFMS's claims fail for the additional reason that AFMS must prove harm to competition but cannot do so. Judge Morrow dismissed the second amended complaint for failure to plead sufficient facts to establish harm to competition. Here again, although AFMS eventually got past the pleading stage, the evidence now establishes that AFMS cannot survive summary judgment. Unable to refute evidence showing that its alleged consulting market is improperly comprised of non-interchangeable services, AFMS uses its opposition to redefine the consulting market and to assert harm in the "shipping delivery market." But Judge Morrow held that AFMS does not participate in that market, and AFMS then dropped it from its subsequent complaints. Even if the Court were to consider AFMS's redefined consulting market, undisputed facts show that the supposed consulting market remains both over- and under-inclusive, each of which is fatal as a matter of law. AFMS also fails to create a triable issue as to harm to competition in either its improperly-resurrected shipping delivery market or its alleged consulting market.

***AFMS cannot prove its conspiracy claim.*** UPS also is entitled to summary judgment on AFMS's conspiracy claim because AFMS fails to raise a triable issue on the issue of conspiracy. AFMS contends that at the October 2009 Parcel Forum, employees of FedEx and UPS "agreed to a new policy" not to deal with 3PNs, but there is absolutely no evidence of such an agreement. AFMS also relies on

evidence showing nothing more than that UPS had some scattered information on what FedEx was doing with regard to 3PNs, and vice versa. But the fact that competitors observe each other's behavior is neither surprising nor unlawful. AFMS has not contradicted UPS's detailed evidence proving that it unilaterally adopted its practices with regard to 3PNs for its own legitimate business reasons, without any form of coordination with FedEx.

## ARGUMENT

## I. AFMS FAILS TO SHOW THAT IT CAN PROVE STANDING

AFMS acknowledges what has been the core issue, and its most fundamental challenge, in this case since its inception: that it must prove that it has antitrust standing. (AFMS Opp. 22-23.) AFMS also acknowledges that antitrust injury is the "key factor" to establish standing, and that AFMS must therefore prove that AFMS and UPS both participate in the relevant market allegedly restrained. (*Id.* 23, 25.)

Yet AFMS never even mentions, nor does it satisfy, the requirements for antitrust injury set forth in controlling Ninth Circuit authority: (1) that AFMS and UPS provide services that are "reasonabl[y] interchangeab[le]" and have "cross-elasticity of demand" between them, and (2) that those competing services are in the relevant market. *Bhan*, 772 F.2d at 1470-71. *AFMS cannot prove standing in the absence of evidence that UPS's services are a reasonable substitute for the services that AFMS provides, and that those services are included in the market in which UPS's conduct allegedly caused injury*. None of AFMS's arguments substitutes for proof of those essential requirements.

### A. AFMS Fails to Raise a Triable Issue on Antitrust Injury

#### 1. Application of the Correct Legal Test Shows That UPS Does Not Participate in the Allegedly Restrained Market

While a plaintiff and a defendant need not be competitors to participate in the same market (consumers, for instance, are market participants), here AFMS

contends that UPS participates in the relevant market by *competing* with AFMS.[1] The Ninth Circuit test for whether firms compete (and thus participate in the same market for standing purposes) is whether the parties provide services that are "reasonabl[y] interchangeab[le]" and for which there is "cross-elasticity of demand." (UPS Br. 17 (quoting *Bhan*, 772 F.2d at 1470-71).)

This legal test is the standard analysis used throughout antitrust law to determine whether firms compete. As the Ninth Circuit has explained, the "field of competition" is the set of firms that sell "services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991).

AFMS nonetheless argues that UPS relies on the wrong legal test. Never even addressing *Bhan*, AFMS relies on three other cases—*Amarel*, *Ad Management*, and *Yellow Pages*—contending that UPS "incorrectly use[d] the traditional non-legal definition of 'competitor'" (AFMS Opp. 24) and that it is not necessary that AFMS be "a traditional competitor" of UPS (*id.* 25). According to AFMS, even if AFMS and other 3PNs "were not traditional direct competitors of UPS," AFMS has standing because it supposedly "serves the important function of imposing an essential discipline on" UPS (*id.* 28) and because UPS and AFMS allegedly have "the 'ability to deprive each other of significant levels of business'" (*id.*).

---

[1] *See, e.g.*, TAC ¶ 11; ECF 67 at 18 (arguing that "AFMS and Defendants provide essentially similar or equivalent shipping consultation services"); ECF 74 at 21-22 (AFMS's allegations failed to "give rise to a plausible inference that defendants intended to compete with AFMS in the market for shipping consultation services"); Gates Decl. Ex. 99 at 1569-70 (Response to UPS Rog. 4) (contending that UPS competes in the alleged consultation market); *id.*, Ex. 87 at 1483-85 (Responses to FedEx Rogs. 14, 15) (contending that UPS and AFMS compete in the market for shipping consultation services).

None of the cases cited by AFMS changed the legal test to determine whether firms compete in the allegedly restrained market. Indeed, the facts in *Yellow Pages* showed that the plaintiff consultants and the defendant competed by providing the same services in the allegedly restrained relevant market, satisfying the reasonable interchangeability test. (UPS Br. 26-27.) As illustrated here, the plaintiffs in *Yellow Pages* had standing because they and the defendant each offered "essentially identical" services, *Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*, 951 F.2d 1158, 1161 (9th Cir. 1991), providing advice regarding the "form, content, and cost of yellow page advertising," *Amarel v. Connell*, 102 F.3d 1494, 1510 (9th Cir. 1996) (discussing *Yellow Pages*).

**Yellow Pages Cost Consultants**

Publisher

Consultant

Advertising Consulting Services

Advertising Consulting Services

Consumer

Contrary to AFMS's contention, *Yellow Pages* did not expand the definition of "competitor" to include any entity that can deprive another of business. (AFMS Opp. 28.) The court was clear that competitors are "*sellers*" whose sales of services or products can "deprive each other of significant levels of business." 951 F.2d at 1162. A public utility can deprive a restaurant of significant levels of business by shutting off the power, but the utility does not compete with the restaurant.

Nor did the Ninth Circuit create special standing rules for consultants by stating that the plaintiffs in *Yellow Pages* "served a significant function" of a competitor. (AFMS Opp. 24.) The Ninth Circuit has made clear that the consultants in *Yellow Pages* served this function by providing advice service in competition with the publishers' service. *Amarel*, 102 F.3d at 1510 ("We also noted [in *Yellow Pages*] that the consultants, ***in competing with the publishers' advice service***, served a key function as competitors: imposing an essential discipline on producers and sellers of goods ….") (emphasis added).

Similarly, *Amarel* did not expand the definition of competitor. In that case, the Ninth Circuit held that the plaintiffs participated in the relevant market for milled rice because the plaintiffs not only were suppliers but also were in a joint-venture-type relationship (illustrated here) with producers of milled rice. *Amarel*, 102 F.3d at 1510 ("plaintiffs supply paddy rice to the mills, and yet they also participate in the market for milled rice because their contractual arrangement with the independent mills gives them a share of the profits from the sale of milled rice").[2] AFMS does not have any similar relationship with shippers. AFMS is not supplying any input that shippers process and sell in competition with UPS. That AFMS is paid a commission based on a percentage of a shipper's savings is nothing like the profit-sharing, joint-venture-type arrangement in *Amarel*.




*Ad Management* is even farther afield; it does not even deal with the definition of a competitor. *See Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 786 (9th Cir. 1996) (plaintiffs "do not compete with publishers in the sale of yellow pages advertising"). As Judge Morrow recognized, and as illustrated here, the plaintiffs in *Ad Management* were market participants because they were *in the chain of distribution*; they purchased advertising space and resold it to their customers.




---

[2] *Amarel* did not make an exception to the market participation requirement for plaintiffs allegedly "targeted by defendants." (AFMS Opp. 25.) The court stated plainly that a supplier may have standing "where that supplier both ***competes with defendants*** and is their target." *Amarel*, 102 F.3d at 1510 (emphasis added).

(ECF 55 at 18 (discussing *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999)).) AFMS is not in the chain of distribution for transportation services. (*Id.* at 17 ("Although AFMS effectively alleges that it acted as its clients' agent in negotiating shipping contracts with defendants, it does not allege facts suggesting that it purchased or paid for shipping services …, i.e., that it entered and became a participant in the market for shipping services.").)

Accordingly, to show antitrust injury, AFMS must prove that UPS provides services that are reasonably interchangeable and have cross-elasticity with AFMS's services, *and* that those services compete in the market allegedly restrained. *Bhan*, 772 F.2d at 1470-71. AFMS fails to raise a triable issue of fact on either of those requirements.[3] As a consultant to shippers, AFMS does not participate in the same market as UPS, and thus lacks standing. *Legal Econ. Evaluations v. Metro. Life Ins. Co.*, 39 F.3d 951, 953-55 (9th Cir. 1994) (consultants to defendants' customers lacked standing).

**2. There Is No Genuine Dispute That UPS Does Not Provide Services Reasonably Interchangeable with Services Provided by AFMS**

**a. AFMS Concedes Facts Showing That UPS Does Not Provide Negotiation Services**

UPS does not provide services that are reasonably interchangeable and have cross-elasticity of demand with AFMS's services. UPS took head on AFMS's descriptions of its own services— "'represent[ing] shippers in negotiating competitive small parcel and freight contracts'" and "'help[ing] shippers negotiate

---

[3] "[S]tanding is a question of law for the district court to decide.... Because the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012), *pet. for cert. filed*, No. 13-63 (July 11, 2013). Thus, even if AFMS were correct that there are issues of fact regarding standing (and there are none), the Court would then hold an evidentiary hearing to decide those issues. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 67-68 (1978) (district court held pretrial evidentiary hearing on standing).

or otherwise obtain maximum savings for their shipping needs.'" (UPS Br. 17 (quoting TAC ¶¶ 3, 12).) UPS carefully detailed AFMS's services as evidenced by AFMS's documents and by testimony from AFMS's management employees. (*Id.* 3-4, 18.) AFMS disputes none of this. (RPGD 2-8.)

***UPS then established that UPS does not provide any of the services AFMS provides to shippers with respect to negotiating carrier contracts.*** (UPS Br. 6-7, 18-20.) Overwhelming evidence shows that AFMS's and UPS's services neither are interchangeable nor have any cross-elasticity. The testimony of shippers, admissions of AFMS's own managing directors and employees, evidence from other 3PNs, and uncontroverted economic analysis all support this conclusion. (*Id.* 18-20 & nn.18-22.)

In response, AFMS fails to establish any genuine dispute that the specific factual comparison of its services and UPS's services shows no overlap. (RPGD 2-6, 19-23.)

- There is no genuine dispute that AFMS's core business ([REDACTED]) is providing price negotiation service to small package shippers, *but UPS does not provide that service*. (RPGD 1, 18.)[4]
- It is undisputed that [REDACTED], *but UPS does not*. (RPGD 3, 20.)
- It is undisputed that [REDACTED], *but UPS does not*. (RPGD 5, 21.)
- And AFMS does not genuinely dispute that *UPS does not provide a litany of negotiation-related services that AFMS provides*.[5]

---

[4] AFMS contends only that UPS provides "advice to shippers regarding the delivery of time-sensitive letters, documents, and packages." (RPGD 18.)

[5] AFMS states that the following facts are undisputed, except that AFMS contends that UPS "does offer advice to shippers regarding the delivery of time-sensitive letters, documents, and packages": [REDACTED]

**b. AFMS Fails to Create a Triable Issue That AFMS and UPS Provide "Advice" That Is Reasonably Interchangeable and Has Cross-Elasticity of Demand**

UPS also showed that AFMS could not rely on a vague description of the services that AFMS provided in discovery responses, i.e., that each "gathers and analyzes data to help shippers 'develop a strategy and advise a shipper on how to save money and match that shipper's specific needs to a carrier's delivery services.'" (UPS Br. 21-26.) Any alleged "advice" is not interchangeable because UPS and AFMS gather different data for different purposes, and play completely different roles. (*Id.* 22-23.)

AFMS nonetheless relies on that same vague description of services, contending that UPS and AFMS both "gather and analyze shipper data … to provide advice regarding which of Defendants' services best match the shipper's specific delivery needs and help the shipper maximize profit." (AFMS Opp. 3; *see also id.* 27, 28, 34, 35, 37, 40.) Yet AFMS fails to address UPS's arguments showing that any "advice" UPS offers is not reasonably interchangeable, nor has cross-elasticity, with AFMS's "advice."

Reasonable interchangeability and cross-elasticity of demand must be assessed from the *consumer's point of view*. *M.A.P. Oil Co. v. Texaco Inc.*, 691 F.2d 1303, 1306 (9th Cir. 1982). While, as AFMS points out (AFMS Opp. 28), the set of consumers cannot define the market (i.e., sophisticated, large shippers vs. small shippers),[6] *markets are defined by what products consumers consider to be*

---

[REDACTED]; UPS does not (RPGD 2, 19); [REDACTED]; UPS does not help shippers negotiate directly with carriers or assist shippers in negotiations for package services UPS provides (RPGD 4, 23); [REDACTED]; UPS does not help shippers analyze competing carrier proposals to assist the shipper in negotiating against UPS or other carriers (RPGD 6, 22).

[6] *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

*reasonably interchangeable*. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). For this reason, UPS documents advising sales representatives to consider and treat 3PNs as competitors, and evidence of how UPS tries to present itself to shippers, do not show reasonable interchangeabilty or cross-elasticity. (UPS Br. 21.)

Yet, that is the only type of evidence AFMS offers. AFMS relies on the very documents regarding how sales associates should view 3PNs that UPS addressed (AFMS Opp. 28),[7] but AFMS fails to show how these documents evidence shippers' views of UPS "advice." AFMS also contends that [REDACTED]

(*Id.* 27; RPF 3-7.) *But AFMS offers no evidence that UPS provides any "advice" that shippers view as reasonably interchangeable with "advice" provided by AFMS.*

AFMS's evidence does not create a triable issue. It does not contradict the evidence demonstrating that UPS and AFMS do not provide any reasonably interchangeable "advice." First, AFMS concedes facts showing that UPS and AFMS "gather and analyze shipper data" to provide completely different types of advice:

- [REDACTED] (RPGD 2.)

---

[7] Despite AFMS's litigation position, AFMS's contemporaneous business documents listing its competitors never identify UPS as a competitor. (Gates Reply Decl. ¶¶ 15, 16, Exs. 162, 163.)



- [redacted]. (RPGD 60.)

[redacted]. (*See* RPGD 14 (undisputed that UPS offers supply chain solutions designed to help customers reduce supply chain costs).) In contrast, [redacted]. (*See* RPGD 1.)

Second, AFMS ignores the uncontroverted evidence that customers [redacted]. (*See* UPS Br. 18 n.18.) As one customer put it, [redacted]."[8] The evidence from other 3PNs, which AFMS also ignores, [redacted]. (*Id.* 19 n.21.)

Third, AFMS fails to address the economic testimony of Dr. Robert Harris, who served as the plaintiffs' economic expert in *Yellow Pages*. (*Id.* 19.) Based on the same economic principles he applied in *Yellow Pages*, Dr. Harris concluded that, unlike the services offered by the consultants and the defendant in *Yellow Pages*, the services offered by UPS are not interchangeable with those offered by AFMS, and the two companies do not compete. (*Id.* 27; Harris Decl. ¶¶ 23-41.)

AFMS's failure to raise a triable issue on reasonable interchangeability and cross-elasticity prevents AFMS from proving the first test for antitrust injury under *Bhan*. Summary judgment is appropriate on this ground, as a matter of law.

---

[8] Gates Decl. ¶ 47, Ex. 46 (Hreshko Dep. at 44:22-46:20). [redacted] (UPS Br. 18 n.18.)

### 3. AFMS Fails to Raise a Triable Issue That Any Competing Services Are in the Relevant Market That Was Allegedly Restrained

AFMS also fails the second essential test for antitrust injury, which requires AFMS to prove that AFMS and UPS provide competing services *in the relevant market*. As UPS pointed out in its opening brief (UPS Br. 25-26), *Exhibitors' Services, Inc. v. American Multi-Cinema, Inc.*, 788 F.2d 574 (9th Cir. 1986), holds that a plaintiff cannot base standing on competing services outside of the relevant market. *Id.* at 579 (even if "two firms compete," antitrust injury requires "that the plaintiff and conspirators compete in the 'market in which trade was restrained'"). The only plausible relevant market is limited to negotiation services, and the "advice" AFMS relies on would be outside of that market. (UPS Br. 24-25.)

AFMS never addresses this issue in its opposition, ignores *Exhibitors' Services*, and fails to proffer evidence controverting that the market must be limited. (RPGD 63.) AFMS nowhere disputes that, as a matter of law, the relevant market is limited to (1) the services allegedly restrained and (2) close economic substitutes for those services. (UPS Br. 24.) Instead, AFMS simply argues that market definition is a question for the jury. (AFMS Opp. 27 n.13.) AFMS fails to raise a genuine dispute. Summary judgment is thus appropriate on this ground.

First, AFMS fails to address the evidence that the only services allegedly restrained are negotiation services. (UPS Br. 23-24 nn.25-29.) Accordingly, there is no genuine dispute that UPS's [REDACTED] could affect only those services, not others. AFMS contends that UPS's [REDACTED] apply to "consultants who advise shippers regarding the delivery of time sensitive letters, documents and packages." (RPGD 86; *see also* RPF 55-56.) But AFMS fails to controvert UPS's evidence that the only plausibly affected services are negotiation services. In fact,

AFMS relies on evidence that confirms that to be the case.[9] Indeed, AFMS's CEO testified that [redacted]"[10] AFMS's managing directors and employees [redacted].[11] And AFMS's experts explain [redacted]"[12]

Second, AFMS fails to address the evidence that "advice" about time-sensitive package delivery is not a close economic substitute for negotiation services. (UPS Br. 25; RPGD 64.) In response to UPS's statement of undisputed facts, AFMS fails to offer any contrary evidence, contending only that "there is cross-elasticity of demand between the advice provided to shippers regarding the delivery of time sensitive letters, documents and packages." (RPGD 64.) This

---

[9] *See, e.g.*, documents cited by AFMS in RPF 55 and 56 (Decker Ex. 45 (Ex. 2187 at 689, 692) [redacted]; *id.* (Ex. 2014 at 086) [redacted]; *id.* (Ex. 2018 at 095) [redacted]; *id.* (Ex. 2037 at 839) [redacted]; Ex. 48 (Ex. 2251 at 213) [redacted]

[10] Gates Reply Decl. ¶ 32, Ex. 179 (Erickson 30(b)(6) Dep. at 14:22-25) [redacted]

[11] *See, e.g.*, Gates Decl. ¶ 28, Ex. 27 (Mocklin-Dwiggins Dep. at 45:1-53:15) [redacted]

[12] *See, e.g.*, Decker Ex. 57 (Brotman Report) at 3281 [redacted]; *id.* at 3261 [redacted]; *id.* at 3280 [redacted]; *id.* at 3281 [redacted]; Gates Decl. ¶ 33, Ex. 32 (Wunderlich Report at 6 [redacted]

contention, even if true, is irrelevant. *It does not show that this type of "advice" is a close economic substitute for negotiation services*. Accordingly, the evidence that the market must be limited to negotiation services, and not include other "advice" (UF 64), is unrebutted. "Advice" is outside of the relevant market, and AFMS cannot create antitrust standing based on supposed UPS "advice" that competes with "advice" from AFMS.

**4. AFMS Cannot Base Standing on Supposed Participation with UPS in a Shipping Delivery Market**

Unable to prove antitrust injury in the consulting market alleged in the operative complaint, AFMS attempts to show it has standing based on participation in a previously dismissed and unpled shipping delivery market. (AFMS Opp. 23.) This argument is procedurally impermissible and also fails on the merits.

AFMS's argument is an improper attempt to resurrect a theory that AFMS abandoned after Judge Morrow rejected it. AFMS's first amended complaint alleged a shipping delivery market, but Judge Morrow ruled that AFMS was not "a participant in the market for shipping services," and "since AFMS is not a participant in that market, it cannot have suffered antitrust injury." (ECF 55 at 17-18.) Judge Morrow granted AFMS leave to amend "to allege that it competed with defendants in the market for shipping consultation services ***and/or*** to allege additional facts showing that it was a participant in the market for time-sensitive package shipping and delivery." (*Id.* at 20 (emphasis added).)

In amending its complaint, AFMS abandoned the allegation that the relevant market is for delivery services; it alleged instead that the relevant market is for shipping consultation services. (*See* ECF 56, ¶ 6 (alleging consultation market); ECF 76, ¶ 6 (same).) Having abandoned its prior allegations concerning a delivery services market, AFMS cannot now argue it has standing based on participation in that unpled market. AFMS "may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment." *La*

*Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010).

On the merits, to have standing, AFMS must prove that it participates with UPS in the alleged *relevant* market, not just any market. *Ad Mgmt.*, 190 F.3d at 1057 (plaintiff had standing because it was a "participant in the relevant market"). AFMS concedes that the relevant market in this case is for consultation services, not shipping delivery services. (AFMS Opp. 36 (relevant market "focuses on a particular type of consulting"); RPF 53.) Moreover, even when AFMS had alleged a relevant market for delivery services, it failed to proffer any facts showing that it participates in a delivery market with UPS. (ECF 55 at 17-18.) Nothing has changed; AFMS still proffers no such facts.

### 5. The Ninth Circuit Has Rejected Standing in Similar Two-Market Cases

AFMS's inability to show that it participates in the shipping delivery market is fatal. AFMS's theory of the case is that UPS and FedEx conspired to restrain competition in the alleged market for consultation services in order to raise rates in another market, the alleged targeted market for delivery services. (AFMS Opp. 7-8.) But the Ninth Circuit has held that, absent participation in the alleged targeted market, plaintiffs lack antitrust standing in cases based on this very theory.

As UPS demonstrated, and as illustrated below, AFMS's situation is no different from that of the consultants in *Legal Economic Evaluations*. (UPS Br. 28.) AFMS's attempt to avoid the implications of that case ignores the facts. (AFMS Opp. 26.) In that case, the consultant plaintiffs alleged that defendants conspired to boycott the plaintiffs, alleged "two relevant product markets" (a relevant market for consulting services and one for the product sold by the defendants), argued that the consulting services put customers in "a stronger negotiating position," and contended that the boycott restrained competition in the consulting market and harmed defendants' customers. *Legal Econ. Evaluations*, 39

F.3d at 953-54. Even assuming as true plaintiffs' contention that the alleged boycott eliminated competition in the consulting market, the Ninth Circuit held that the plaintiffs lacked standing because the alleged harm to competition "—decreased annuity benefits to tort plaintiffs and increased annuity costs to liability carriers—nevertheless occurs in markets in which [the plaintiffs do] not compete," and affirmed summary judgment for defendants. *Id.* at 954-55.




*Legal Economic Evaluations* is not an isolated case. The Ninth Circuit held plaintiffs did not have standing in a similar two-market case, *Lucas v. Bechtel Corp.*, 800 F.2d 839 (9th Cir. 1986), in which electricians alleged that the "defendants violated the antitrust laws by conspiring to restrain trade in the labor market in order to monopolize the power plant construction market." 800 F.2d at 842. Because plaintiffs did not participate in the market for the design and construction of nuclear power plants, the Ninth Circuit held that they had not suffered antitrust injury, even though "they contend that the defendants engaged in an intentional secondary conspiracy to depress wages in the electrician labor market in order to effect the primary conspiracy, and that they are participants in this market." *Id.* at 844. Similarly, in *Sacramento Valley, Chapter of the National Electrical Contractors Ass'n v. IBEW, Local 340*, 888 F.2d 604 (9th Cir. 1989), the Ninth Circuit held that a bargaining representative did not have standing to challenge an alleged conspiracy to eliminate the plaintiff "as a competitor *in the market for labor union services* and collective bargaining … for electricians" as part of a scheme to fix electrician wages. 888 F.2d at 606.

In sum, AFMS cannot prove antitrust injury as a matter of law, which is dispositive of standing and therefore of AFMS's entire case. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371 (9th Cir. 2003) ("a plaintiff must adequately allege and eventually prove 'antitrust *injury*'").

**B. The Other Standing Factors Confirm That AFMS Lacks Standing**

UPS also established that three other standing factors—directness of injury, speculative nature of harm, and complexity of damages—also weigh against standing. (UPS Br. 28-30.) AFMS fails to show otherwise. AFMS's argument that it has suffered "direct antitrust injury" and is "an immediate victim" incorrectly assumes that AFMS competes with UPS in the relevant market. (AFMS Opp. 29-31 (relying on *Yellow Pages* and *Ad Management*).) AFMS's argument is also contrary to Ninth Circuit precedent, which holds that where a plaintiff claims (as here) that defendants restrained trade in a market in which plaintiff participates to affect a second market, plaintiff's injuries are indirect, and the participants in the second market are more immediate victims. *Lucas*, 800 F.2d at 844; *Sacramento Valley*, 888 F.2d at 608. Contrary to AFMS's assertion, its damages claims are speculative because [REDACTED] (Kupperberg Decl. ¶ 2, Ex. 1 at 6-10.) And calculating AFMS's alleged damages would be overly complex; unlike the typical antitrust case, damages here cannot be [REDACTED] (*Id.* ¶ 2, Ex. 1 at 1, 11.)

In light of AFMS's failure to proffer facts on which the Court could find AFMS has standing, coupled with its failure to dispute pivotal facts, the Court should enter summary judgment on all of AFMS's claims.

## II. AFMS FAILS TO SHOW THAT IT CAN PROVE HARM TO COMPETITION

To maintain its antitrust claims, AFMS must (but cannot) prove its alleged relevant market and harm to competition (not just to competitors) in that market. (UPS Br. 30-38.) In response, AFMS seeks to avoid having to prove a relevant market, even though antitrust law requires it to do so. Unable to prove the relevant market it alleged, AFMS attempts to abandon that market, but AFMS is bound by the allegations in the amended complaint.

### A. AFMS Cannot Avoid Proving a Relevant Market

AFMS's argument that it need not prove a relevant market is wrong. First, as discussed above, the definition of the relevant market is necessary in this case for AFMS to prove standing.

Second, AFMS cannot avoid market definition by flight to the per se rule. To start with, the per se rule cannot be applied to Count 2, AFMS's "vertical" claim that UPS's agreements with its customers restrain trade. All vertical claims must be assessed under the rule of reason. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007) ("Vertical price restraints are to be judged according to the rule of reason."); *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 59 (1977) (rule of reason applies to vertical nonprice restraints).

Furthermore, AFMS's conspiracy claim (Count 1) also does not merit per se treatment. As the Ninth Circuit explained in *Ad Management*, "the per se approach is not to be extended to new factual situations." 92 F.3d at 787 (rejecting application of per se rule). The per se rule applies only where prior judicial experience demonstrates that the conduct at issue is a "naked restraint[] of trade with no purpose except stifling of competition," *White Motor Co. v. United States*, 372 U.S. 253, 263 (1963), and has "manifestly anticompetitive effects and lack[s] any redeeming virtue," *Leegin*, 551 U.S. at 886.

The alleged conduct here does not meet these criteria. The type of agreement alleged here—one in which delivery service providers allegedly agree not to deal with consultants that undercut each carrier's efforts to provide complementary supply chain services—is not conduct that courts have reviewed, much less concluded is a naked restraint of trade subject to per se analysis. Indeed, the economic evidence shows that limiting the role of 3PNs in the shipper-carrier relationship is procompetitive. (Williams Decl. ¶ 1, Ex. 1 at ¶¶ 96-97.)[13] Thus, the "presumption in favor of a rule-of-reason standard" applies, *Business Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 726 (1988), and AFMS must prove harm to competition in a relevant market.

**B. AFMS Cannot Prove the Market It Alleged**

Although AFMS is correct that the definition of a relevant market is ordinarily a factual issue (AFMS Opp. 34), summary judgment is appropriate where, as here, there is "insufficient evidence to show … the product market." *Morgan, Strand, Wheeler & Biggs*, 924 F.2d at 1489.

UPS showed that the broad market that AFMS alleges—defined as "composed of those business entities which advise shippers regarding the delivery of time sensitive letters, documents, and packages" (TAC ¶ 6)—is *over-inclusive*, and thus not legally cognizable, *because the evidence shows that this definition encompasses myriad different and non-interchangeable services*. (UPS Br. 33 n.36.) AFMS makes no effort to rebut this evidence.

UPS also demonstrated that the alleged market was *under-inclusive because it failed to include shippers' in-house resources*. Most shippers use their own

---

[13] This evidence of a plausible, procompetitive rationale precludes AFMS's characterization of the conduct as a per se unlawful boycott, *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003), and prohibits application of a "quick look" analysis, *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1138 (9th Cir. 2011).

employees to provide "advice" and negotiation services regarding time-sensitive package delivery services. (*Id.* 35 nn.38-39; UF 83-84.)

In response, AFMS argues that shippers' in-house resources cannot be in the market because 3PN "advice" is better than what shippers' employees could provide. (AFMS Opp. 37.) The issue for market definition, however, is *not* whether 3PN services are better, but whether shippers view services provided by their own employees as "reasonably interchangeable" with 3PN services. *du Pont*, 351 U.S. at 395 (services must be reasonably interchangeable by consumer); *see also In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988) (rejecting proposed market limited to "super premium" ice cream, stating "[c]ourts have repeatedly rejected efforts to define markets by price variances or product quality variances"), *aff'd*, 895 F.2d 1417 (9th Cir. 1990); *Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889 F.2d 524, 528 (4th Cir. 1989) (rejecting alleged market limited to "better branded" furniture based on higher quality, price, and reputation).[14]

The evidence showing that shippers in fact substitute in-house resources for 3PN services (UPS Br. 35 nn.38-39; UF 83-84) is uncontroverted. The only evidence AFMS cites on shippers' views *confirms* that shippers view negotiation services provided by their in-house resources as a potential substitute for such services provided by 3PNs, and make decisions accordingly.[15] AFMS's President and CEO admitted, [redacted]

---

[14] AFMS's assertion that *Yellow Pages* "upheld a similar consultant-based market that did not include in-house substitutes" (AFMS Opp. 38) is incorrect. The only market issue on appeal in *Yellow Pages* was whether GTE and yellow pages consultants offered competing services. The court did not address the issue of other sources of supply in the market.

[15] *See* evidence cited in RPGD 83-84, *e.g.*, Decker Decl. Ex. 10 (Ex. 1300 at 399) [redacted]; *id.* Ex. 7 (Ex. 1334 at 208) [redacted]

[REDACTED] (Gates Decl. ¶ 2, Ex. 1 (Erickson (30(b)(6)) Tr. 133:4-7).)

AFMS's market definition thus fails as a matter of law for not including all sources of supply; it is both under-inclusive and over-inclusive. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995); *Morgan, Strand, Wheeler & Biggs*, 924 F.2d at 1490.

### C. AFMS's Attempt to Redefine Its Alleged Consulting Market Fails

#### 1. AFMS Is Bound by the Market Alleged in Its Complaint

Realizing that the relevant market alleged in its complaint is plainly unsustainable, AFMS now tries to again change its market definition. (AFMS Opp. 35 (contending that the factual record and AFMS's expert report show that the market is narrowly defined).) Nothing in AFMS's complaint expressly limits the alleged relevant market to some subset of "business entities" as AFMS now contends. (AFMS Opp. 34-35.) "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1153 n.9 (N.D. Cal. 2007) (plaintiff "may not amend its complaint through argument in a brief opposing summary judgment"). The relevant market alleged in AFMS's complaint is over-inclusive and under-inclusive. Summary judgment is appropriate.

#### 2. AFMS's Narrowed Definition Is Not Legally Cognizable

To the extent it encompasses anything other than negotiation services, AFMS's redefined relevant market fails because the narrowed definition still includes non-interchangeable services. (UPS Br. 33 n.36.) AFMS proclaims that "this case focuses on a particular type of consulting—the advising of 'shippers regarding time sensitive letters, documents and packages by air or by ground within the United States and to and from the United States to foreign countries'—and the market for this one type of consulting." (AFMS Opp. 36.) But, as discussed above,

AFMS failed to create a genuine dispute on the fact that such "advice" is not interchangeable with negotiation services and cannot be included in the relevant market. AFMS's redefined market thus fails as a matter of law. *See Equifax, Inc. v. Fed. Trade Comm'n*, 618 F.2d 63, 66-67 (9th Cir. 1980).

AFMS's redefined relevant market also remains under-inclusive for the same unrebutted reasons as the alleged relevant market. (*See* Section II.B.)

**D. AFMS Fails to Show Harm in the Shipping Consultation Market**

To prove harm to competition, AFMS must (but cannot) show a market-wide increase in prices, decrease in output, or diminished quality. (UPS Br. 36-38.) An "act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality." *Rebel Oil*, 51 F.3d at 1433.

AFMS makes no effort to demonstrate any of such effects.[16] Rather, AFMS focuses on the supposed impact on competitors, asserting that "nearly 100%" of the alleged consulting market "has been closed off to [3PNs] … virtually eliminating every consultant from the market." (AFMS Opp. 38.) Even if true, such evidence would not prove harm to competition. "[C]onduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Rebel Oil*, 51 F.3d at 1433.

Moreover, AFMS's assertions are simply not true. Uncontroverted, sworn testimony from consultants [redacted] (*See* RPGD 67, 68, 85; UPS

---

[16] AFMS's expert [redacted] Gates Reply Decl. ¶ 33, Ex. 180 (Brotman Tr. 123:3-8). [redacted]

Br. 37 n.42; RPF 44.) [redacted][18] In fact, AFMS [redacted].[19] In addition, as discussed above, AFMS fails to rebut the evidence that shippers are able to substitute their own resources for 3PNs, which precludes a finding of anticompetitive effects. *Rebel Oil*, 51 F.3d at 1433. Given this uncontroverted evidence, AFMS's factual assertions are without any foundation, and AFMS has failed to proffer sufficient evidence to show the required harm to competition, rather than merely harm to competitors. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988) (plaintiff must prove "injury to the market or to competition in general, not merely injury to individuals or individual firms").

**E. AFMS Cannot Show Harm in a "Delivery Services Market"**

AFMS also argues that it has shown harm to competition in a "delivery services market," contending "that shippers have been forced to pay higher prices for the shipping of time-sensitive letters, documents, and packages because of [the alleged] boycott." (AFMS Opp. 40.) There are four independent reasons why AFMS's argument fails.

---

[17] *See, e.g.*, Decker Decl. ¶ 15, Ex. 13 (Febus Tr. 62:3-6) [redacted]. 3PNs can be very successful working behind the scenes. [redacted] (Gates Decl. ¶ 53, Ex. 52 (Martinez Tr. 113:19-115:18)), [redacted] (Decker Decl. ¶ 13, Ex. 11 (Martinez Dep. at 131:18-132:10)).

[18] For this reason, AFMS's reliance on internal carrier documents [redacted]

[19] *See, e.g.*, Gates Decl. ¶ 12, Ex. 11 (Dep. Ex. 61 at 812) [redacted]

First, AFMS must prove harm to competition in the *relevant* market, which AFMS flatly admits is "the market for shipping consultation services." (RPF 53.) As discussed above, AFMS abandoned alleging a relevant market for shipping delivery services. It cannot now "amend its complaint through argument in a brief opposing summary judgment." *Netbula*, 516 F. Supp. 2d at 1153 n.9.

Second, AFMS improperly excludes reasonably interchangeable services from its supposed delivery market. *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 987 (C.D. Cal. 2012) (rejecting market definition because expert did not "expand that definition until all reasonable substitutes [were] included").[20] AFMS's expert [redacted]. (Decker Decl. Ex. 57 (Brotman Report) at 5-6.) This conclusion is groundless; shippers [redacted].[21] In other words, shippers tend to "view the shipping market as a continuum of all shipping services, which are interchangeable depending upon need and price. The services need not be identical to be considered reasonably interchangeable." *W. Parcel Express v. UPS of Am., Inc.*, 65 F. Supp. 2d 1052,

---

[20] AFMS cannot rely on supposed "direct evidence" of anticompetitive effects to dispense entirely with the requirement of proving a relevant market. *See Live Concert*, 863 F. Supp. 2d at 1000 (such treatment reserved only for "highly suspicious" restraints); *see also Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 737 (7th Cir. 2004) (direct evidence sufficient only if "plaintiff can show the rough contours of a relevant market, and show that the defendant commands a substantial share of the market").

[21] Gates Reply Decl. ¶ 5, Ex. 152 (Goodwin Dep. at 14:19-16:13) [redacted], ¶ 34, Ex. 181 (Hersh [redacted], ¶ 3, Ex. 150 (Benge Dep. at 155:20-156:13) [redacted]. ¶ 35, Ex. 182 (Malech Dep. 27:18-28:6) [redacted]

1058-59 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999). AFMS's supposed "delivery market" thus fails as a matter of law.

Third, AFMS's "delivery market" improperly excludes alternative suppliers—regional carriers and the U.S. Postal Service. (Decker Decl. Ex. 57 (Brotman Report) at 11-16); *Rebel Oil*, 51 F.3d at 1433 (market improper where it fails to include all sources of supply). The record shows that shippers [redacted] .[22] Indeed, AFMS and other 3PNs [redacted],[23] and [redacted] .[24] Similarly, AFMS [redacted] .[25]

Fourth, AFMS has offered no evidence that actual delivery prices have increased. AFMS's evidence of supposed price increases consists entirely of hearsay statements regarding published rates, not actual prices paid by shippers. (RPF 42.) Moreover, it is undisputed that [redacted]

---

[22] *See, e.g.*, Gates Reply Decl. ¶ 6, Ex. 153 (Burt Dep. at 107:20-108:1) [redacted] ¶ 7, Ex. 154 (Dep. Ex. 168 at 438) [redacted], ¶ 8, Ex. 155 (Taylor Dep. at 25:8-23) [redacted], ¶ 9, Ex. 156 (Hastings Dep. at 11:17-12:4) [redacted]).

[23] *See, e.g.*, Gates Reply Decl. ¶ 28, Ex. 175 (Merrill Dep. 188:6-23) [redacted], ¶ 29, Ex. 176 (Stitz Dep. at 30:13-25) [redacted], ¶ 17, Ex. 164 (Felts Dep. at 160:17-161:4) [redacted], ¶ 30, Ex. 177 (Martinez Dep. at [redacted], ¶ 34, Ex. 183 (Sailor Dep. at 71:20-72:9) [redacted] ¶ 6, Ex. 153 (Burt Dep. at 69:16-70:3) ([redacted]).

[24] *See, e.g.*, Gates Reply Decl. ¶ 31, Ex. 178 (Hreshko Dep. at 18:21-19:10, 21:21-25:7) [redacted]), ¶ 27, Ex. 174 (Priest Dep. at 78:11-80:25) ([redacted]).

[25] *See, e.g.*, Gates Reply Decl. ¶ 19, Ex. 166 (Osborne Dep. at 140:4-19, 165:6-17) ([redacted]), ¶ 37, Ex. 184 (Dep. Ex. 190 at 954) ([redacted]") [redacted], ¶ 38, Ex. 185 (Dep. Ex. 64 at 844) (USPS [redacted]").

[redacted]. (RPGD 16.) Reducing 3PN interference allows UPS to better provide those supply chain services, thus improving the quality of UPS's services. (Williams Decl. ¶¶ 38-39.) AFMS's failure to account for the fact that any [redacted] destroys its argument that it can show competition has been harmed. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 395 (7th Cir. 1984) (analysis must account for "quality-adjusted price to the consumer"); (Williams Decl. ¶¶ 42-43).

## III. AFMS FAILS TO SHOW THAT IT CAN PROVE CONSPIRACY

In addition to AFMS's lack of standing and inability to prove harm to competition, UPS is entitled to summary judgment on AFMS's conspiracy claim (Count 1) for the independent reason that AFMS has failed to proffer sufficient evidence to defeat summary judgment on that claim. To avoid summary judgment in the absence of direct evidence, AFMS must proffer "evidence that tends to exclude the possibility that [UPS] acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."[26] *Id.* Two firms' engaging in follow-the-leader behavior does not evidence a conspiracy. *See United States v. Int'l Harvester Co.*, 274 U.S. 693, 754 (1927); *Citric Acid*, 191 F.3d at 1102; *Wilcox v. First Interstate Bank of Or., N.A.*, 815 F.2d 522, 526 (9th Cir. 1987).

UPS established that it had legitimate, independent reasons for [redacted] and explained in detail how it unilaterally developed and adopted its [redacted]. (UPS Br. 8-10, 39.) In response, AFMS did not proffer

---

[26] AFMS relies on the standard stated in *Petroleum Products*. (AFMS Opp. 11.) But the Ninth Circuit explicitly *disclaimed* that articulation of the standard as "*dicta*." *In re Citric Acid Litig.*, 191 F.3d 1090, 1096 (9th Cir. 1999).

direct evidence of an agreement, does not dispute facts showing that UPS had independent business reasons for its conduct, and relies on a timeline of events that belies the existence of a conspiracy.

**A. AFMS Did Not Proffer Direct Evidence of an Agreement**

Despite its characterizations, AFMS did not proffer *direct* evidence of an agreement, i.e., "evidence that is explicit and requires no inferences to establish" the existence of a conspiracy. *Citric Acid*, 191 F.3d at 1093-94. Defendants showed that the [REDACTED] [REDACTED]. (FedEx Br. 19.) AFMS nonetheless highlights [REDACTED] (AFMS Opp. 4, 12.) But AFMS intentionally omits the [REDACTED] (Decker Decl. ¶ 49, Ex. 47 at 2816 (Ex. 2043 at 870).) Moreover, [REDACTED] (AFMS Opp. 12.)

AFMS also relies on [REDACTED] (AFMS Opp. 12-13.) This is not unusual in competitive industries and is certainly not direct evidence of a conspiracy. *See Citric Acid*, 191 F.3d at 1105 (exchange of information among defendants' employees not direct evidence of conspiracy) (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999)). In fact, [REDACTED]

Finally, [REDACTED] [REDACTED]. [REDACTED]

[redacted] (Gates Reply Decl. ¶ 32, Ex. 179 (Santaniello Dep. at 5:13-6:2, 35:3-9, 36:15-37:17, 74:18-75:6).) The Ninth Circuit has held that use of the term [redacted] in similar circumstances is not direct evidence of a conspiracy because of the ambiguous nature of that phrase. *See Richards v. Neilsen Freight Lines*, 810 F.2d 898, 903-04 (9th Cir. 1987); *see also Citric Acid*, 191 F.3d at 1104 (finding no conspiracy despite alleged "smoking gun" evidence).

### B. AFMS Fails to Proffer Evidence Tending to Exclude the Possibility That UPS Acted Independently

Without direct evidence of a conspiracy, AFMS can defeat summary judgment only by coming forward with evidence that tends to exclude the possibility that UPS acted independently. UPS demonstrated that it had legitimate, independent reasons for its [redacted] (UPS Br. 8-9, 39.) AFMS does not dispute the facts underlying this showing. As AFMS admits, [redacted] (RPGD 14.) AFMS also concedes that [redacted] (RPGD 27); [redacted] (RPGD 29-30); [redacted] (RPGD 34), [redacted] (RPGD 35). AFMS also concedes that [redacted] (RPGD 36.)

Given AFMS's concessions, the evidence on which AFMS relies does not "tend to exclude the possibility" of independent conduct. On the contrary, the evidence shows that UPS independently adopted its [redacted] *First*, AFMS does not dispute that [redacted]

[redacted] (RPGD 87.) The [redacted] (RPGD 36-38.) Similar responses to shared external market conditions do not tend to exclude the possibility of independent action. *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 660-62 (9th Cir. 1963) (no inference of conspiracy where external factors explained parallel conduct); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 963 (N.D. Cal. 2007).

*Second*, AFMS concedes that [redacted] (RPGD 88; RPGD FedEx 54), and does not dispute that [redacted] (RPF 34). [redacted] (RPGD 49.)

It is further undisputed that UPS's [redacted] (RPGD 38.) Even AFMS contends that UPS learned of FedEx's refusals to deal at the October 2009 Parcel Forum and through subsequent competitive intelligence. (AFMS Opp. 4, 12.) AFMS further admits that [redacted] (RPGD 47.) The evidence thus shows only lawful, unilateral behavior, not a conspiracy. *Int'l Harvester Co.*, 274 U.S. at 754; *Citric Acid*, 191 F.3d at 1102; *Wilcox*, 815 F.2d at 526.

*Third*, as for the alleged simultaneous issuance of memoranda on April 23, 2010, "[s]imply stated, coincidence does not a conspiracy make."[27] *Mkt. Force, Inc. v. Wauwatosa Realty Co.*, 906 F.2d 1167, 1170 (7th Cir. 1990). The

---

[27] As explained in UPS's motion to exclude, the opinions of AFMS's expert, Dr. David Campbell, are unfounded and inadmissible. (ECF 168.)

undisputed evidence shows that [REDACTED] (RPGD 90.) *See Blue Bell Co. v. Frontier Ref. Co.*, 213 F.2d 354, 360 (10th Cir. 1954) (no inference of conspiracy from coincidence of simultaneous cut-off of supply in light of defendants' reasons). AFMS has provided *absolutely no evidence* that UPS and FedEx coordinated [REDACTED].

In sum, the undisputed evidence shows that UPS acted independently in devising, adopting, and implementing its [REDACTED]. Looking "at the big picture," as the Court must, *Citric Acid*, 191 F.3d at 1106, reveals that AFMS has no evidence "tending to exclude the possibility" that UPS acted of its own accord. Summary judgment on AFMS's Count 1 should therefore be entered in favor of UPS for this independent reason.

**CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment against AFMS as to each of its claims against UPS.

Dated: July 22, 2013

MORRISON & FOERSTER LLP

By: Paul T. Friedman/SPG
Paul T. Friedman

Attorneys for Defendant
UNITED PARCEL SERVICE CO.

la-1215095